STATE OF NORTH CAROLINA v. BRIAN KEITH BANKS

No. COA09-1150

(Filed 1 March 2011)

**1. Homicide— first-degree murder—sufficient evidence**

The trial court did not err in failing to dismiss a first-degree murder charge against defendant as there was sufficient evidence of all the elements of the crime, including that defendant was the perpetrator.

**2. Appeal and Error— preservation of issues—constitutional errors—not raised at trial**

Defendant's argument that he was denied his right to a fair trial guaranteed by the Fifth Amendment to the United States Constitution and Article I of the North Carolina Constitution by the admission of a witness's testimony was not properly before the Court of Appeals and was not addressed. Because defendant did not raise this constitutional issue at trial, he failed to preserve it for appellate review.

**3. Evidence— prior inconsistent statement—impeachment —no abuse of discretion**

The trial court did not abuse its discretion pursuant to N.C. Rules of Evidence 403 and 607 in allowing the State to impeach a witness with her pretrial statement. The witness admitted to having written the statement and testified that she could not remember making certain parts of the statement. Moreover, even if the trial court erred in allowing the State to impeach Harrin using her prior statement, defendant failed to demonstrate prejudice from the error.

**4. Evidence— hearsay—exception—no prejudicial error**

The trial court did not commit prejudicial error by allowing detectives to testify concerning the contents of a witness's prior statement. Detective Downing's testimony was admissible to explain the subsequent conduct of the person to whom the statement was made. Furthermore, although Detective Weaver's testimony was inadmissable hearsay, defendant failed to show that there was a reasonable possibility that, had the error not been made, a different result would have been reached at trial.

**5. Constitutional Law— right to fair trial—objections sustained—no prejudice**

Defendant's argument that his constitutional right to a fair trial was denied by the prosecutor's cross-examination of defendant using a witness's pretrial statement was overruled. Because defendant's objections to all three questions were sustained, he could not demonstrate prejudice arising from these questions.

**6. Evidence— prior statement—cross-examination—evidence previously introduced—no prejudicial error**

The trial court did not commit prejudicial error in allowing the prosecutor to cross-examine defendant's mother regarding the prior statement made by a witness. Because the evidence was already before the jury, even if the trial court had erred in overruling defendant's objection, no prejudice existed.

**7. Pretrial proceedings— denial of motion to continue—no error**

The trial court did not improperly deny defendant's motions to continue his first-degree murder trial. Based on the facts, defendant was not entitled to a presumption of prejudice under *State v. Rogers*, 352 N.C. 119. Moreover, defendant failed to show that he suffered prejudice as a result of the denial.

**8. Constitutional Law— effective assistance of counsel—no prejudicial error**

Defendant's argument that he was denied effective assistance of counsel in a first-degree murder trial was overruled. Defendant failed to show that any error of counsel was prejudicial to his defense so as to deprive defendant of a fair trial.

Appeal by defendant from judgment imposing a sentence of life imprisonment without the possibility of parole entered by Judge Mark E. Powell on 23 February 2009 in Buncombe County Superior Court. Heard in the Court of Appeals 24 February 2010.

*Roy Cooper, Attorney General, by Special Deputy Attorney General Jonathan Babb, for the State.*

*Parish, Cooke & Condlin, by James R. Parish, for the defendant-appellant.*

STEELMAN, Judge.

**STATE v. BANKS**

[210 N.C. App. 30 (2011)]

Where the State produced substantial circumstantial evidence supporting each essential element of the offense and that defendant committed the offense, the trial court did not err in denying defendant's motion to dismiss based upon the sufficiency of the evidence. Constitutional issues, which are not raised at trial, will not be considered for the first time on appeal. A party may impeach its own witness where the witness admitted making a prior handwritten statement and testified that she could not remember making certain parts of the statement. The jury is presumed to follow the trial court's instructions on its consideration of evidence. The use of another's statement to explain the subsequent conduct of a person is an exception to the hearsay rule. Defendant cannot show prejudice where substantially the same evidence was properly admitted through another witness. Defendant cannot show prejudice on appeal where his objections were sustained by the trial court. Where any asserted prejudice is at best highly speculative, defendant cannot meet his burden of showing a constitutional violation resulting from the denial of his motion to continue. Where defendant's assertions of ineffective assistance of counsel are based upon the failure of counsel to object to the introduction of evidence and the same evidence was introduced through another witness, and not challenged on appeal, defendant cannot show prejudice arising out of his counsel's conduct.

## I. Factual and Procedural Background

On the afternoon of 3 December 2007, Keith Holloway ("Holloway") went to the residence of Jody Bordeaux and Jimmy Jackson on Hanover Street in Asheville. Between 4:30 and 4:45, Holloway was observed getting into a black Volkswagen Jetta with tinted windows. At approximately 5:45 p.m., Jim Jones was driving down Pearson Bridge Road in Buncombe County and saw two individuals on the side of the road. One was "kind of hunkered down or almost laying on the left-hand side of the road," and the second was crossing the road headed from the left side to the right. Mr. Jones noticed a dark sedan on the side of the road. Around 6:00 p.m., Donald Ramsey (Ramsey), was driving on Pearson Bridge Road with his wife and a friend when he noticed two individuals standing on the right side of the road. After passing them and as he was turning at the next intersection, he heard five gunshots, and one of his passengers said, "[t]hey've shot him and he's running down the road." Ramsey immediately turned his car around and called 911. He found "[Holloway] was slumped, but he was still sitting on the roadway, and as I walked up to him he fell all the way backwards."

An autopsy of Holloway revealed that he had four gunshot wounds to his arm and chest region, and a single gunshot wound to the head. Two .32 caliber bullets were recovered from Holloway's body. Dr. Donald Jason (Dr. Jason), a forensic pathologist, performed the autopsy and testified that the cause of death was the gunshot wound to the head.

Between 6:00 p.m. and 6:30 p.m., defendant arrived at the home of his brother, Jeff Banks. Brittany Jones (Jones) was at the residence when defendant arrived. Jones was Holloway's girlfriend and knew defendant through her aunt, Renee Harrin (Harrin). Harrin was the long-time girlfriend of Jeff Banks. Approximately one month prior to Holloway's murder, Jones and Holloway were suspended from school for having sex in a stairway at school. During the course of the murder investigation, Jones was interviewed several times, and she stated that defendant repeatedly got angry anytime he saw her talking to Holloway. A few weeks prior to Holloway's murder, defendant told Jones that "he was going to kill Holloway and make his mother stand over his grave and cry." She also noticed that the day after defendant made this statement, she saw a picture of a tombstone with the inscription "R.I.P. Keith" on defendant's MySpace internet page.

On 4 December 2007, Detectives Weaver (Det. Weaver) and Downing (Det. Downing) interviewed defendant regarding Holloway's murder. In the interview, defendant acknowledged that he drove a black Volkswagen Jetta, and that he and Holloway had argued over Jones. Defendant stated that he and Holloway were "cool" and "everything was taken care of." Defendant also admitted that he had posted some material about Holloway on his MySpace page, including the tombstone. After the interview, the investigation's review of defendant's MySpace page revealed several messages containing explicit threats of violence directed towards Holloway following the suspension of Jones and Holloway from school. The threatening messages included, "[t]his mother f_ _ _ _ _ f_ _ _ _ _ my girl [Jones] at school. He's dead" and "he [Holloway] better hope it was good, because that will be the last piece of p_ _ _ _ he gets."

On 5 December 2007, Det. Downing interviewed Harrin and she wrote out and signed the following statement:

I got a phone call from Brian [defendant] about 5:45 pm on Mon. 12-3-07. He wanted to know when I was coming home and I told him in about 1 hour. So when I got home Brian was really upset—shaking and crying. I had ask [sic] him what was wrong

and he said his nerves were bothering him and the medication he was taking was making him flip out. Then he told me he couldn't believe he did it and I said did what and he said I shoot [sic] Keith [Holloway] in the back of the head and then I shoot [sic] a couple more times toward his back. Then he started crying again and told me he thought Keith was dead. He told me he threw the gun over in some bushes or leaves where Keith's body was found and the Coat he was wearing he threw it in a trashcan at a car wash and I don't no [sic] what he did with his shirt he had on.

Det. Downing briefly halted the interview and relayed the information regarding the location of the murder weapon to his supervisor, Sergeant Welborn. Based upon this information, the murder weapon was located near where Holloway had been shot. The murder weapon was a Smith & Wesson .32 caliber long revolver which contained six spent cartridge casings. A search of defendant's room produced a gun case, multiple live rounds, and four (4) spent .32 caliber casings. Another live .32 caliber round was recovered from the front-door pocket of defendant's car.

The firearm and the six (6) spent casings, the four (4) spent casings recovered from defendant's room and the two (2) .32 caliber bullets recovered from Holloway's body during the autopsy, were submitted to Special Agent Shane Greene of the State Bureau of Investigation ("SBI") for forensic examination. His examination revealed that the spent casings recovered from the cylinder of the revolver, from defendant's room, and the slugs recovered from Holloway's body were all fired from the .32 caliber revolver found at the murder scene.

On 6 December 2007, defendant was arrested and charged with the first-degree murder of Holloway.

Defendant was tried non-capitally. The jury found defendant guilty of first-degree murder on 23 February 2009. Defendant was sentenced to life imprisonment without possibility of parole and ordered to pay restitution in the amount of $10,897.04.

Defendant appeals.

## II. Defendant's Motion to Dismiss

[1] In his first argument, defendant contends that the trial court erred in failing to dismiss the first-degree murder charge based upon insufficiency of the evidence. We disagree.

## A. Standard of Review

Since defendant offered evidence following the denial of his motion to dismiss at the close of the State's evidence, we only review his motion to dismiss made at the close of all the evidence. *State v. Bruce*, 315 N.C. 273, 280, 337 S.E.2d 510, 515 (1985). "[I]n ruling on a motion to dismiss, the trial court must determine whether there is substantial evidence of each essential element of the crime and whether the defendant is the perpetrator of that crime." *State v. Ford*, 194 N.C. App. 468, 472-73, 669 S.E.2d 832, 836 (2008) (quoting *State v. Everette*, 361 N.C. 646, 651, 652 S.E.2d 241, 244 (2007)). On appellate review, this Court "must view the evidence in the light most favorable to the State, giving the State the benefit of every reasonable inference." *State v. Locklear*, 322 N.C. 349, 358, 368 S.E.2d 377, 382-83 (1988) (citing *State v. Williams*, 319 N.C. 73, 79, 352 S.E.2d 428, 432 (1987)). "If there is substantial evidence-whether direct, circumstantial, or both-to support a finding that the offense charged has been committed and that the defendant committed it, the case is for the jury and the motion to dismiss should be denied." *Locklear*, 322 N.C. at 358, 368 S.E.2d at 383 (citation omitted). Further, "[t]he defendant's evidence, unless favorable to the State, is not to be taken into consideration." *State v. Jones*, 280 N.C. 60, 66, 184 S.E.2d 862, 866 (1971). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Earnhardt*, 307 N.C. 62, 66, 296 S.E.2d 649, 652 (1982) (*quoting State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980)).

## B. Defendant as Perpetrator of Holloway's Murder

Defendant contends that the State failed to produce substantial evidence that he was the perpetrator of Holloway's murder. Defendant cites us to the case of *State v. Cutler*, 271 N.C. 379, 156 S.E.2d 679 (1967), where the State's evidence was deemed to be insufficient because there was no physical evidence tying defendant to the murder scene. Defendant also cites the cases of *State v. White* and *State v. Myers (and Coleman)*, where the evidence produced by the State aroused a strong suspicion as to defendant's guilt, but was not sufficient to show that defendant was the perpetrator because it merely established that defendant had the opportunity to commit the murder. *State v. White*, 293 N.C. 91, 97, 235 S.E.2d 55, 59 (1977); *State v. Myers (and Coleman)*, 181 N.C. App. 310, 315, 639 S.E.2d 1, 4-5 (2007) (*quoting State v. Malloy*, 309 N.C. 176, 179, 305 S.E.2d 718, 720 (1983)).

The instant case is distinguishable from the cases cited by defendant, and is more similar to the case of *State v. Ledford,* 315 N.C. 599, 340 S.E.2d 309 (1986). In *Ledford* the State produced evidence that the sole of defendant's boot matched a shoe print at the murder scene and cigarette butts taken from defendant's home were the same brand as those found at the murder scene. *Id.* at 611-13, 340 S.E.2d at 317-18. Our Supreme Court held that the State's evidence was sufficient to allow the reasonable inference that defendant was in fact the perpetrator of the murder. *Id.* at 613-14, 340 S.E.2d at 318-19.

Most murder cases are proved through circumstantial evidence. In the instant case, the State produced sufficient circumstantial evidence to support a reasonable inference that defendant was the perpetrator of Holloway's murder. "Circumstantial evidence and direct evidence are subject to the same test for sufficiency, and the law does not distinguish between the weight given to direct and circumstantial evidence." *State v. Berry,* 356 N.C. 490, 500, 573 S.E.2d 132, 141 (2002) (citations omitted), *supersedeas denied, mandamus denied, cert. denied,* 358 N.C. 236, 594 S.E.2d 188 (2004). The State presented evidence that defendant was jealous of Holloway's relationship with Jones and made numerous threats of violence toward Holloway. The murder weapon was found in the brush off of Pearson Bridge Road where Holloway was murdered. Four (4) spent casings found in defendant's bedroom were fired from the murder weapon. In addition, defendant had the opportunity to commit the murder. Defendant drove a black Volkswagen Jetta. Holloway was seen getting into a black Jetta with tinted windows around 4:30 or 4:45 p.m. on the day he was murdered. A red polyester fiber consistent with Holloway's jacket was recovered from defendant's Jetta. In the light most favorable to the State, we hold that this evidence rises above mere speculation that defendant was the perpetrator of the murder and was sufficient to withstand the defendant's motion to dismiss the charge of first-degree murder at the close of all the evidence.

This argument is without merit.

### III. Statement of Renee Harrin

[2] In his second, third, fourth, and fifth arguments defendant contends that the trial court erred by allowing the State to examine Harrin concerning her pre-trial statement. Defendant argues that he was denied his right to a fair trial guaranteed by the Fifth Amendment to the United States Constitution and Article I of the North Carolina Constitution. We disagree.

## A. Alleged Constitutional Violations

Initially, we examine whether defendant's constitutional arguments were preserved for appellate review.

"In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C.R. App. P. 10(a)(1) (2010); *State v. Benson*, 323 N.C. 318, 322, 372 S.E.2d 517, 519 (1988) (*quoting State v. Hunter*, 305 N.C. 106, 112, 286 S.E.2d 535, 539 (1982)) ("[A] constitutional question which is not raised and passed upon in the trial court will not . . . be considered on appeal").

At trial, defendant's objections to Harrin's testimony were based entirely upon the case of *State v. Hunt*, 324 N.C. 343, 378 S.E.2d 754 (1989). That decision analyzed the admission of prior statements of a witness, who subsequently recanted the statements under Rule 607 of the North Carolina Rules of Evidence. *Id.* The Supreme Court granted a new trial based upon analysis from federal court cases under Rules 401 and 403 of the North Carolina Rules of Evidence. *Id.* The Supreme Court clearly stated that its prejudice analysis was performed pursuant to N.C. Gen. Stat. § 15A-1443(a), dealing with non-constitutional error, rather than N.C. Gen. Stat. § 15A-1443(b), which deals with constitutional error. *Id.* at 354, 378 S.E.2d at 760. There was no discussion of federal or state constitutional issues. Since defendant's objections to Harrin's testimony at trial were not based upon constitutional grounds, his constitutional arguments may not be raised for the first time on appeal. *State v. Allen*, 360 N.C. 297, 313, 626 S.E.2d 271, 284 (2006) (citation omitted), *cert. denied*, 549 U.S. 867, 166 L. Ed. 2d 116 (2006). Our review of Harrin's testimony is limited to defend-ant's evidentiary arguments.

## B. Standard of Review of Evidentiary Rulings under Rule 403 and Rule 607 of the North Carolina Rules of Evidence

[3] Our review of the trial court's decision to admit or exclude evidence pursuant to N.C. R. Evid. 403 is for abuse of discretion. *Hunt*, 324 N.C. at 353, 378 S.E.2d at 760. Rulings by the trial court concerning whether a party may attack the credibility of its own witness are reviewed for an abuse of discretion. *State v. Covington*, 315 N.C. 352, 338 S.E.2d 310 (1986).

Similarly, our standard of review for rulings made by the trial court pursuant to Rule 607 of the North Carolina Rules of Evidence is abuse of discretion. *State v. Covington*, 315 N.C. 352, 356-57, 338 S.E.2d 310, 314 (1986); *see also State v. Middleton*, ·No. COA09-64, 2009 N.C. App. LEXIS 1252 (N.C. Ct. App. Aug. 4 2009).

"Abuse of discretion occurs where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *State v. Syriani*, 333 N.C. 350, 379, 428 S.E.2d 118, 133 (1993) (citing *State v. Phipps*, 331 N.C. 427, 453, 418 S.E.2d 178, 191-92 (1992)), *cert. denied*, 510 U.S. 948, 126 L. Ed. 2d 341 (1993).

## C. Renee Harrin's Testimony

On the morning of 17 February 2009, prior to being called to testify for the State, Harrin met with the prosecutor at approximately 9:00 a.m. During that meeting, Harrin acknowledged talking with officers and recalled writing out and signing a statement regarding the events of 3 December 2007. Harrin asserted that the officers pressured her, threatened to charge her as an accessory to the murder, and take her children to the Department of Social Services. Harrin told the prosecutor that she did not remember certain things in the statement and "[could] not say if Brian said any of it." Specifically, she "could not remember whether Brian said he shot Keith in the head or shot him a couple more times" or "whether Brian told her he threw the gun in the bushes and she may have heard it from someone else." Following this interview, the prosecutor delivered a typed copy of his notes of the conversation with Harrin to defense counsel at 9:30 a.m. on 17 February 2009.

At 2:04 p.m. on 17 February 2009, the State called Harrin to testify. Defendant immediately objected pursuant to *State v. Hunt*, 324 N.C. 343, 378 S.E.2d 754. Harrin testified, without objection, that on 3 December 2007, she was out Christmas shopping, and that defendant was at her residence when she returned. Defendant was upset. She spoke with him in one of the bedrooms. On 5 December 2007, Harrin spoke to police concerning the events of 3 December 2007 and acknowledged writing out a statement which she signed. Harrin was shown a copy of her statement. She denied that it refreshed her recollection. Over objection, she testified that she heard that the gun "was throwed in the bushes," but could not recall who told her. Harrin could not recall her conversation with defendant on 3 December 2007, but admitted that she had spoken with no one but defendant

and police about the gun. The prosecutor asked Harrin about a number of items contained in the statement. Harrin testified that she could not recall what she told officers.

At 2:37 p.m. the jury was excused from the courtroom, at the request of the prosecutor, after the court sustained several of defendant's objections. The State argued that since Harrin admitted that she had spoken with defendant on 3 December 2007 and acknowledged that she had written out the statement in her own handwriting that the State was entitled to introduce the statement pursuant to Rule 803(5) (recorded recollection), and that the State was entitled to cross-examine her concerning her statement pursuant to Rule 607 (impeachment of witness).

On *voir dire*, the State attempted to lay a foundation for the admission of the statement under Rule 803(5). The trial court ruled that the State had not laid a proper foundation and sustained defendant's objection to the admission of the statement. Thereafter, the prosecutor questioned Harrin before the jury concerning some of the matters contained in her handwritten statement. As to each of these questions either the trial court sustained the objection, or Harrin testified "I can't remember." Harrin's handwritten statement (State's Exhibit 7) was never received into evidence.

### D. State's Use of Statement to Impeach Harrin

In his second argument, Defendant contends that the trial court erred by allowing the State to impeach Harrin using her prior statement. We disagree.

"Under certain circumstances a witness may be impeached by proof of prior conduct or statements which are inconsistent with the witness's testimony." *State v. Whitley*, 311 N.C. 656, 663, 319 S.E.2d 584, 589 (1984) (citation omitted). Under N.C.R. Evid. 607, these prior inconsistent statements are admissible for the purpose of shedding light on a witness's credibility. *Id.*; N.C. Gen. Stat. § 8C-1, Rule 607 (2009). "[A] prior inconsistent statement may not be used to impeach a witness if the questions concern matters which are only collateral to the central issues." *State v. Najewicz*, 112 N.C. App. 280, 288-89, 436 S.E.2d 132, 137-38 (1993) (citation omitted) (noting that "once a witness *denies* having made a prior inconsistent statement . . . the prior statement concerns only a *collateral matter, i.e.,* whether the statement was ever made."), *disc. review denied*, 335 N.C. 563, 441 S.E.2d 130 (1994).

Defendant relies upon *State v. Hunt*, 324 N.C. 343, 378 S.E.2d 754, to support his argument that the impeachment of Harrin was "a subterfuge to get evidence before the jury which would otherwise be inadmissible" and unfairly prejudice defendant. In *Hunt*, our Supreme Court held "that once a witness denies having made a prior statement, the State may not impeach that denial by introducing evidence of the prior statement." *State v. Wilson*, 135 N.C. App. 504, 507, 521 S.E.2d 263, 264-65 (1999); *State v. Minter*, 111 N.C. App. 40, 48-49, 432 S.E.2d 146, 151 (1993), *cert. denied*, 335 N.C. 241, 439 S.E.2d 158 (1993).

The instant case is distinguishable from *Hunt*. Harrin testified that she wrote and signed the statement given to Det. Downing on 5 December 2007, whereas the witness in *Hunt* denied "any memory of uttering the transcribed words or of signing the paper upon which they had been written." *Hunt*, 324 N.C. at 345, 378 S.E.2d at 755.

"Where the witness admits having made the prior statement, impeachment by that statement has been held to be permissible." *State v. Riccard*, 142 N.C. App. 298, 303, 542 S.E.2d 320, 323 (2001), *cert. denied*, 353 N.C. 530, 549 S.E.2d 864 (2001). In *Riccard*, two witnesses testified as to the events leading up to the robbery and assault of the victim. *Id.* at 304, 542 S.E.2d at 323. Both witnesses admitted making prior statements to the police discussing these events and implicated defendant; both testified that parts of their prior statements were inaccurate, and one testified that he did not remember making certain parts of his previous statement. *Id.* A witness may be impeached with a prior statement where the witness admitted making the prior statement and then testified that he could not remember making certain parts of the prior statement. *Id.* at 303-304, 542 S.E.2d at 323.

Harrin recalled writing out and signing a statement for Det. Downing on 5 December 2007, but testified that she did not "remember some things in the statement and cannot say if Brian said any of it." Following her testimony, the court instructed the jury as follows: "Members of the jury, remember the questions aren't evidence. It's what the witness says in response to the questions that's evidence."

"A prior inconsistent statement is admissible to contradict a witness's testimony, although it may not be considered as substantive evidence." *State v. Martinez*, 149 N.C. App. 553, 558, 561 S.E.2d 528, 531 (2002) (citation omitted). The trial court's instruction made it clear to the jury that the prosecutor's questions were not evidence to

be considered by the jury. This left as evidence from Harrin's testimony a string of answers of "I don't remember." The jury is presumed to follow the instructions of the trial court. *State v. Watts*, 357 N.C. 366, 375, 584 S.E.2d 740, 747 (2003), *cert. denied*, 541 U.S. 944, 158 L. Ed. 2d 370 (2004).

Even assuming *arguendo* that the trial court erred in allowing the State to impeach Harrin using her prior statement, defendant failed to demonstrate prejudice from the error. N.C. Gen. Stat. § 15A-1443(a) (2009) requires that in order to establish reversible error, a defendant must show that "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial. . . ." We hold that based upon other admissible evidence, including that of Det. Downing and Special Agent Greene, discussed below, that defendant cannot meet this burden. N.C. Gen. Stat. § 15A-1443(a).

This argument is without merit.

## IV. Testimony of Detectives Downing and Weaver

[4] In defendant's third and fourth arguments, he contends that the trial court erred in allowing Detectives Downing and Weaver to testify concerning the contents of Harrin's prior statement. Defendant argues that the trial court allowed the State to introduce inadmissible hearsay evidence of Harrin through the testimony of the two detectives. We disagree.

### A. Testimony of Detective Downing

Det. Downing testified that he interviewed Harrin commencing at 12:40 p.m. on 5 December 2007. He denied making any threats to Harrin. After identifying Harrin's statement, he was asked "without saying what she told you, did she respond when you asked her if she knew what had happened to the gun?" Over the objection of defendant, Det. Downing testified that "she did." Based upon her response, Det. Downing immediately contacted his supervisor, Sergeant Welborn, and the gun was found before the interview with Harrin was concluded.

### B. Analysis of Detective Downing's Testimony

" 'Hearsay' is a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801(c) (2009). Under N.C. Gen. Stat. § 8C-1, Rule 802 (2009) hearsay state-

ments are inadmissible as evidence; however, the same hearsay statements are admissible if they fall within certain recognized exceptions. N.C. Gen. Stat. § 8C-1, Rules 803 and 804 (2009). Our Supreme Court "has held that the statements of one person to another are admissible to explain the subsequent conduct of the person to whom the statement was made." *State v. Maynard*, 311 N.C. 1, 16, 316 S.E.2d 197, 205 (1984) (citing *State v. Tate*, 307 N.C. 242, 297 S.E.2d 581 (1982)), *cert. denied*, 469 U.S. 963, 83 L. Ed. 2d 299 (1984).

In the instant case, Det. Downing testified that Harrin was asked about "what had happened to the gun." The objected to portion of Det. Downing's testimony falls within the rationale of *Maynard* to explain the subsequent conduct of Det. Downing and other members of the Asheville Police Department. The trial court did not abuse its discretion in overruling defendant's objection to Det. Downing's testimony.

### C. Testimony of Detective Weaver

Det. Forrest Weaver testified over objection that the following information was gleaned from the Harrin interview:

that the firearm was thrown by Mr. Banks just below where Keith's—the crime scene where Keith was actually shot. There's a little pull-off on the right-hand side, and the information from that interview was that the gun was thrown somewhere from that vehicle right in that general area.

On cross-examination, Det. Weaver was asked:

Q    The information you received that caused you to look for the gun and other materials came exclusively from Brittany Jones, her aunt and her mother; isn't that true?

A    The information from [sic] the gun came from the aunt, not Brittany.

### D. Analysis of Weaver Testimony

Nothing in the record indicates that Det. Weaver was present during the interview of Harrin by Det. Downing. Defendant is correct that the objected to testimony was hearsay. The State contends that since defendant later cross-examined Det. Weaver concerning this testimony, that the benefit of the objection was lost, citing *State v. Reed*, 153 N.C. App. 462, 466, 570 S.E.2d 116, 119 (2002), *disc. review denied*, 356 N.C. 622, 575 S.E.2d 521 (2002). This is incorrect. In *Reed*,

defendant failed to object when the same evidence was subsequently offered, resulting in waiver of the prior objection on appeal. *Id.* In the instant case, defendant cross-examined Det. Weaver concerning the prior objected to testimony.

This did not result in a waiver of the prior objection on appeal. "The rule does not mean that the adverse party may not, on cross-examination, explain the evidence, or destroy its probative value, or even contradict it with other evidence upon peril of losing the benefit of his exception." *State v. Lee,* 189 N.C. App. 474, 478, 658 S.E.2d 294, 298 (2008) (quoting *State v. Van Landingham,* 283 N.C. 589, 603, 197 S.E.2d 539, 548 (1973)), *disc. review denied,* 362 N.C. 477, 667 S.E.2d 230 (2008). In this case, counsel was attempting to show that the information concerning the location of the gun could have come from sources other than Harrin. This cross-examination did not result in a waiver of his prior objection.

It was thus error for the trial court to admit this hearsay testimony. However, we must now consider whether its admission was prejudicial. Under N.C. Gen. Stat. § 15A-1443(a) (non-constitutional error), the burden rests upon defendant to demonstrate that "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial. . . ." (2009). This burden the defendant cannot meet. Even though Det. Weaver's testimony contained more extensive details as to where the murder weapon was found, its import is no different than the admissible testimony of Det. Downing. As a result of the interview of Harrin, police returned to the murder scene and located the murder weapon. Since Det. Downing's testimony was admissible, there was no prejudicial error in the admission of Weaver's testimony.

## V. Cross-Examination of Defendant

[5] In defendant's fifth argument, he contends that his constitutional right to a fair trial was denied by the prosecutor's cross-examination of defendant using Harrin's pre-trial statement. Defendant points to three questions asked during cross-examination, which he contends are "too inflammatory and prejudicial to the defendant to have not unfairly prejudiced the defendant." We disagree.

It is a well settled principle that one may not suffer prejudice where his objections are sustained. *State v. Call,* 349 N.C. 382, 413, 508 S.E.2d 496, 515 (1998). "No prejudice exists, for when the trial court sustains an objection to a question the jury is put on notice that

it is not to consider that question." *State v. Roache*, 358 N.C. 243, 296, 595 S.E.2d 381, 415 (2004) (citing *State v. Carter*, 342 N.C. 312, 324, 464 S.E.2d 272, 280 (1995), *cert. denied*, 517 U.S. 1225, 134 L. Ed. 2d 957 (1996)).

The record reflects that during cross-examination the trial court sustained defendant's objections to each of the questions now complained of, and that defendant did not provide an answer to any of the questions. Immediately following these three questions the trial court instructed the jury as follows: "[m]embers of the jury, the prosecution can ask the witness questions, but that exhibit is not in evidence and you're not to consider that exhibit. You haven't seen it." Because defendant's objections to all three questions were sustained, he cannot demonstrate prejudice arising from these questions.

This argument is without merit.

## VI. Cross-examination of Defendant's Mother

[6] In his sixth argument, defendant contends that the trial court erred by allowing the prosecutor to cross-examine defendant's mother regarding the prior statement of Harrin, citing *State v. Williams*, 322 N.C. 452, 368 S.E.2d 624 (1988). We disagree.

Our Supreme Court has held that a party is not prejudiced by the admission of evidence that was in substance already before the jury from previous testimony. *State v. Garner*, 330 N.C. 273, 286, 410 S.E.2d 861, 868 (1991); *State v. Faucette*, 326 N.C. 676, 687, 392 S.E.2d 71, 77 (1990) (quoting *State v. Ramey*, 318 N.C. 457, 470, 349 S.E.2d 566, 574 (1986)) (noting that "the erroneous admission of . . . evidence, is not always so prejudicial as to require a new trial.").

On cross-examination, the prosecutor asked Mrs. Banks if she had seen Harrin's statement and she testified that she had not. Over objection, Mrs. Banks also stated that she did not know the murder weapon was found while detectives were speaking to Harrin. While Harrin's unsworn statement was not in evidence, Det. Weaver and Det. Downing previously testified that the murder weapon was found during the interview with Harrin. The substance of Mrs. Banks testimony concerning whether the murder weapon was found during the interview with Harrin had been previously introduced. Because this evidence was already before the jury, even if the trial court erred in overruling defendant's objection, no prejudice would exist. N.C. Gen. Stat. § 15A-1443(a).

This argument is without merit.

VII. Motion to Continue

**[7]** In his eighth argument, defendant contends that the trial court improperly denied his motions to continue the trial in this case. Defendant further contends that the denial of his motions to continue deprived him of his constitutional rights of due process and effective assistance of counsel. We disagree.

"Ordinarily, a motion for a continuance is a matter within the sound discretion of the trial court, and the court's ruling on the motion is not subject to review absent a showing of abuse of discretion." *State v. Mitchell*, 194 N.C. App. 705, 708, 671 S.E.2d 340, 342 (2009) (citing *State v. Searles*, 304 N.C. 149, 153, 282 S.E.2d 430, 433 (1981)). However, where "a motion to continue is based on a constitutional right, then the motion presents a question of law which is fully reviewable on appeal." *State v. Smith*, 310 N.C. 108, 112, 310 S.E.2d 320, 323 (1984) (citing *State v. Baldwin*, 276 N.C. 690, 698, 174 S.E.2d 526, 531 (1970)).

"[T]he denial of a motion to continue . . . is sufficient grounds for the granting of a new trial only when the defendant is able to show that the denial was erroneous and that he suffered prejudice as a result of the error." *State v. Rogers*, 352 N.C. 119, 124, 529 S.E.2d 671, 675 (2000); *State v. Branch*, 306 N.C. 101, 104, 291 S.E.2d 653, 656 (1982).

> To establish a constitutional violation, a defendant must show that he did not have ample time to confer with counsel and to investigate, prepare and present his defense. To demonstrate that the time allowed was inadequate, the defendant must show how his case would have been better prepared had the continuance been granted or that he was materially prejudiced by the denial of his motion.

*State v. Williams*, 355 N.C. 501, 540-41, 565 S.E.2d 609, 632 (2002) (internal citations and quotations omitted), *cert. denied*, 537 U.S. 1125, 154 L. Ed. 2d 808 (2003). An accused must be afforded "a reasonable time to investigate, prepare and present his defense." *State v. Tunstall*, 334 N.C. 320, 328, 432 S.E.2d 331, 336 (1993) (citation omitted). "[A] reasonable length of time for defense preparation must be determined upon the facts of each case." *Searles* at 154, 282 S.E.2d at 433 (citations omitted). "While a defendant ordinarily bears the burden of showing ineffective assistance of counsel, prejudice is presumed 'without inquiry into the actual conduct of the trial' when

'the likelihood that any lawyer, even a fully competent one, could provide effective assistance' is remote." *Tunstall*, 334 N.C. at 329, 432 S.E.2d at 336 (quoting *United States v. Cronic*, 466 U.S. 648, 659-60, 80 L. Ed. 2d 657, 668 (1984)).

## C. Analysis

There were a series of motions to continue made by defendant in this case beginning in August 2008 and continuing throughout the trial of this matter. On appeal, defendant's argument focuses on only one aspect of these motions, and we limit our discussion to that issue. We note that the motions at issue in this case were specifically based upon constitutional grounds before the trial court.

On 15 September 2008, certain shell casings, identified as Q10 through Q15 were submitted by the Asheville Police Department to the SBI laboratory for analysis. On 14 October 2008, Special Agent Shane Greene prepared a report stating that these shell casings had been fired from the murder weapon. It appears from the record that this report was provided to defendant in 2008. On 11 February 2009 defendant made a motion for *Brady* and *Kyles* material, which included a request for the entire SBI case file pertaining to the firearms examination and identification, including bench notes, copies of testing, and new testing data. This information was provided to defendant on 11 February 2009. Defendant's motion to continue at trial and his argument on appeal are based upon the fact that he did not previously realize that items Q10 through Q15 were shell casings found by police on a dresser in defendant's room. Because defendant did not realize the source of the shell casings until the eve of trial, he was unable to procure independent testing of these shell casings and the murder weapon.

The motion to continue was initially heard by the trial court on the morning of 16 February 2009. The motion was denied, with the express proviso that "at the end of the State's evidence you may ask for additional time for whatever other review you consider to be appropriate" should sufficient time not be afforded to evaluate the materials during the presentation of the State's case. On 19 February 2009, defendant renewed his motion to continue subsequent to the testimony of Special Agent Greene. The motion was again denied by the trial court, with specific findings that all "reports and submissions requests were provided to the defense" and that there was no violation of the discovery statutes or bad faith on the part of the State. The trial court further stated that "if you have a time line and an expert

available, I can consider giving you time to have an examination done. . . ." At no time thereafter did defendant make any request for a recess of the trial to complete forensic testing on items Q10 through Q15 and the murder weapon.

Defendant argues that under the rationale of *State v. Rogers*, that we should presume prejudice without inquiry into the actual conduct of the trial court because under the circumstances it was unlikely that even a fully competent attorney could have provided effective assistance. 352 N.C. at 125, 529 S.E.2d at 675 (citing *Cronic*, 466 U.S. at 659-60, 80 L. Ed. 2d at 668 and *Tunstall*, 334 N.C. at 329, 432 S.E.2d at 336).

We hold that *Rogers* is distinguishable from the instant case. In *Rogers*, defendant was charged with capital murder. 352 N.C. 119, 529 S.E.2d 671. His counsel was replaced thirty-four days prior to trial. *Id.* Previous counsel had failed to interview many of the witnesses. *Id.* The trial court denied newly appointed counsels' motion to continue. *Id.* The Supreme court held that "[i]t is unreasonable to expect that any attorney, no matter his or her level of experience, could be adequately prepared to conduct a bifurcated capital trial for a case as complex and involving as many witnesses as the instant case." *Id.* at 125, 529 S.E.2d at 675-76.

In the instant case, defendant's court-appointed counsel was allowed to withdraw on 14 July 2008, and defendant was thereafter represented by retained counsel. His motion to continue on 7 August 2008 was granted, and the trial date rescheduled from 8 September 2008 to 16 February 2009. Special Agent Greene's report was delivered to defendant in 2008. The additional discovery requests were not filed until 3 February 2009, followed by the *Brady* and *Kyles* motions on 11 February 2009. The trial court afforded the defendant an opportunity to have the forensic examination conducted during the trial. Apparently, defendant declined to do so. Based upon these facts, we hold that defendant is not entitled to a presumption of prejudice under the rationale of *Rogers*.

Since the motion to continue was based upon constitutional allegations, we review it as a question of law, fully reviewable on appeal. *Smith*, 310 N.C. at 112, 310 S.E.2d at 323. Under this review, defendant still has the burden of demonstrating that he suffered prejudice as a result of any alleged error. *Rogers*, 352 N.C. at 124, 529 S.E.2d at 675. We are unable to discern that defendant has made such a showing. His argument is that had he been given additional time to

procure an independent forensic examination of items Q10 through Q15 and the murder weapon, such an analysis *might* have shown that the casings found in defendant's bedroom were not fired by the murder weapon. While we acknowledge that the expert testimony linking these shell casings to the murder weapon was a vital piece of evidence in the State's case, we decline to hold that defendant has made a showing of prejudice based upon the mere possibility that an independent test *might* be contrary to the results of the SBI laboratory.

This argument is without merit.

### VIII. Ineffective Assistance of Counsel Claims

[8] In his seventh argument, defendant contends that the trial court erred in allowing the prosecutor to examine defendant's father concerning an incident where a car was shot up with an AK-47 assault riffle during cross-examination of defendant's father and mother. In his ninth and tenth arguments, defendant contends that he was denied effective assistance of counsel because counsel failed to object to questions by the prosecutor concerning a car being shot up with an AK-47. We disagree.

Argument seven is addressed to the conduct of the trial court in allowing the prosecutor to cross-examine defendant's father concerning the incident involving the AK-47 and the nature of the trial court's limiting instruction to the jury. However, the entire argument made by defendant focuses on ineffective assistance of counsel. We do not consider the issues raised in the seventh argument except to the extent that they are implicated in our analysis of defendant's ineffective assistance of counsel claims, as set forth below.

### A. Standard of Review of Ineffective Assistance of Counsel Claims

The Sixth Amendment to the United States Constitution guarantees defendant the right to counsel, which has been interpreted to afford defendants the right to effective assistance of counsel. U.S. Const. Amend. VI.; *McMann v. Richardson*, 397 U.S. 759, 771, 25 L. Ed. 2d 763, 773 (1970). Assistance of counsel is ineffective if counsel fails to provide representation meeting an "objective standard of reasonableness." *State v. Braswell*, 312 N.C. 553, 561-62, 324 S.E.2d 241, 248 (1985) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693 (1984)). The United States Supreme Court has enunciated a two-part test for determining whether a defendant

received ineffective assistance of counsel. Under the *Strickland* test, for assistance of counsel to be ineffective:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, at 687, 80 L. Ed. 2d at 693. This test was adopted by the North Carolina Supreme Court in *State v. Braswell*, 312 N.C. at 562, 324 S.E.2d at 248. "The first element requires a showing that counsel made serious errors; and the latter requires a showing that, even if counsel made an unreasonable error, 'there is a reasonable probability that, but for counsel's errors, there would have been a different result in the proceedings.' " *Id.* at 563, 324 S.E.2d at 248; *see State v. Pate*, 187 N.C. App. 442, 448-49, 653 S.E.2d 212, 217 (2007) ("A 'reasonable possibility' of a different result at trial is a much lower standard than that a different result 'probably' would have been reached at trial. . . .").

When counsel's performance is subjected to judicial scrutiny on appellate review, this Court must be highly deferential and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694; *State v. Mason*, 337 N.C. 165, 178, 446 S.E.2d 58, 65 (1994). Defendant may rebut this presumption by specifically identifying those acts or omissions that are not "the result of reasonable professional judgment" and the court determining, "in light of all the circumstances, the identified acts were outside the wide range of professionally competent assistance." *Strickland* 466 U.S. at 690, 80 L. Ed. 2d at 695.

### B. Mrs. Banks's Testimony

Mrs. Banks, mother of defendant, testified as a defense witness. On direct examination she denied knowledge of a rifle bought by defendant from Leicester Pawn prior to 3 December 2007. She went on to characterize defendant as a "great" son, a caring person who did not like to hurt the feelings of others, and never cursed.

On cross-examination, the prosecutor asked Mrs. Banks whether defendant used an AK-47 to shoot up the vehicle of Walema Bell. Her answer was that witnesses said two black boys did it, but that defendant pled guilty.

### C. Mr. Banks's Testimony

Mr. Banks, father of the defendant, testified as a defense witness. On direct examination, Mr. Banks testified that he had never heard defendant threaten anybody. On cross-examination, the prosecutor asked if defendant had threatened Walema Bell prior to shooting up her car. Mr. Banks denied ever seeing the AK-47 purchased at Leicester Pawn Shop by defendant. He then clarified that the car was not Walema Bell's, but her mother's, and was at the mother's house when it was shot up.

### D. Defendant's Testimony

Subsequent to the testimony of his parents, defendant testified in his own defense. On cross-examination, the prosecutor questioned defendant about certain postings to his MySpace Internet page:

Q   Someone's talking about putting guns—or rounds in someone else's property?

A   Yes, sir. And no one's house was ever fired into.

Q   But someone's car was?

A   Unoccupied car. Twenty-nine founds [sic] was fired into an unoccupied car. It was misdemeanor charges.

Q   Twenty-nine rounds of what?

A   AK-47.

Q   And after you shot twenty-nine rounds into her car, what did you do after that?

A   It was me and two other black males in the car.[1] I had left the scene and we went out to a grocery store out towards Weaverville—I think that was where it was towards—and we went to the grocery store, and my brother, Jeff Banks, had called me on the phone that they were looking for me. I'd left the AK-47 in the car and the two black males [sic]. My brother picked me up and drove me to the police station. The detec-

---

1. All evidence in the case indicates the defendant was white, not black.

tive said to work with them and he'd work with me. So I come in and worked with him and I made bond. I was charged with two misdemeanors.

Q Who was driving the car?

A I was driving the car.

### E. Analysis

Under the second prong of the *Strickland* test, defendant must show that any error of counsel was prejudicial to his defense so as to deprive defendant of a fair trial. 466 U.S. at 687, 80 L. Ed. 2d at 693. On appeal, defendant only asserts that counsel's performance was deficient in not objecting to the prosecutor's cross-examination of his mother and father concerning the shooting into the Bell vehicle with the AK-47. However, defendant does not assert that his counsel was ineffective in not objecting to the prosecutor's examination of the defendant himself concerning the incident. We note that the cross-examination of defendant on this incident was far more extensive than that of his parents.

Defendant cannot show prejudice where the same evidence was received into evidence, without objection, and no error is assigned to its adjudication on appeal. *See State v. Campbell*, 296 N.C. 394, 399, 250 S.E.2d 228, 231 (1979) (citations omitted) ("It is well established that the admission of evidence without objection waives prior or subsequent objection to the admission of evidence of a similar character.").

Further, even assuming *arguendo* that these three arguments were properly presented on appeal, we cannot say that their admission by the trial court was error, or that this evidence was so highly prejudicial that its admission would have resulted in a different verdict in this case.

### IV. Conclusion

We conclude that defendant received a fair trial in this case, free from prejudicial error.

These arguments are without merit.

NO PREJUDICIAL ERROR.

Judges BRYANT and BEASLEY concur.