An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-106
NORTH CAROLINA COURT OF APPEALS

Filed:  15 July 2014

IN THE MATTER OF:                    Gaston County
                                     No. 13 JA 90
    O.O.

_____

IN THE MATTER OF:                    Mecklenburg County
                                     No. 13 JA 123
    O.O.


    On writ of certiorari to review adjudication order entered 5 August 2013 by Judge James A. Jackson in Gaston County District Court and disposition order entered 23 December 2013 by Judge Rickye McKoy-Mitchell in Mecklenburg County District Court.  Heard in the Court of Appeals 30 June 2014.


        *Twyla Hollingsworth-Richardson, for petitioner-appellee Mecklenburg County Department of Social Services.*

        *Richard Croutharmel, for respondent-appellant father.*

        *Tawanda Foster, for Guardian ad Litem.*


        MARTIN, Chief Judge.


    Respondent-father appeals by writ of certiorari from an order adjudicating O.O. a neglected juvenile and a disposition

order based on that adjudication. After careful review, we affirm.

O.O. is the oldest of father's seven children. On 17 October 2011, a judgment was entered granting legal and primary physical custody of all seven children to their mother. The trial court found that the greater weight of the evidence supported allegations of domestic violence by father against the children and their mother and therefore determined that it was in the best interests of the children to grant legal and primary physical custody of the children to their mother. Nevertheless, the trial court found that father was "also a fit and proper person to have the care, custody[,] and control" of the children and granted him secondary physical custody. The trial court further found that O.O., twelve years old at the time, was placed in New Hope of the Carolinas Treatment Center in June 2010 after the Mecklenburg County Department of Social Services ("DSS") found that she sexually abused some of her siblings. O.O. was a patient of the inpatient treatment facility until April 2011.

In October 2012, a physical altercation occurred between O.O. and her mother. As a result, mother would not allow O.O.

to reside in her home. O.O. resided with father until 27 February 2013.

On 1 March 2013, DSS filed a petition alleging that O.O. was a neglected and dependent juvenile. DSS alleged that a physical altercation arose on 27 February 2013 between O.O. and father "because [O.O.] used an expletive." DSS claimed that O.O. sustained marks on her neck, wrist, and underarm area as a result of the altercation. DSS further claimed that O.O. was afraid to return to father's home and could not return to her mother's home. Noting its long history of involvement with the family, DSS also indicated that O.O. had been "sexually inappropriate with some of her siblings in the past" and that it would be "counterproductive" for O.O. to return to her mother's home where her siblings resided. No other placements were available for O.O. DSS obtained nonsecure custody of O.O. by order entered on 1 March 2013.

On 6 May 2013, an order was entered transferring venue from Mecklenburg County to Gaston County. On 5 August 2013, O.O. was adjudicated a neglected juvenile. On 16 August 2013, venue was transferred back to Mecklenburg County. On 23 December 2013, the trial court entered a disposition order in which it ordered that O.O. remain in the custody of DSS.

Father filed *pro se* written notice of appeal from the trial court's orders twice, first on 4 December 2013, and then again on 21 January 2014. Father's notices of appeal fail to fully comply with the requirements of Rule 3.1 of the North Carolina Rules of Appellate Procedure because they lack signature by father's trial counsel. Father's appeal is therefore subject to dismissal. *McQuillin v. Perez*, 189 N.C. App. 394, 397, 657 S.E.2d 924, 927 (2008) ("Our Appellate Rules are mandatory, and failure to comply with them subjects an appeal to dismissal."). Cognizant of the deficiency in his notice of appeal, father seeks review by petition for writ of certiorari. In our discretion, we allow the petition. *See* N.C.R. App. P. 21(a)(1).

_____

Father first argues the trial court abused its discretion in violation of Rule 607 of the North Carolina Rules of Evidence when it denied him the opportunity to attack O.O.'s credibility by playing a video recording of a prior incident during the adjudication hearing. Father sought to introduce a video recording of a prior incident involving O.O. to refute her testimony that she had only previously struck father in self-defense. Father alleges this evidence would have shown that

O.O.'s testimony was inconsistent with her prior conduct. We are not persuaded.

We review a trial court's ruling pursuant to Rule 607 for an abuse of discretion. *State v. Banks*, 210 N.C. App. 30, 38, 706 S.E.2d 807, 814 (2011). Rule 607 provides that "[t]he credibility of a witness may be attacked by any party." N.C. Gen. Stat. § 8C-1, Rule 607 (2013). Specific instances of the conduct of a witness, for the purpose of attacking the witness's credibility may, in the discretion of the trial court, be inquired into on cross-examination of the witness if they are probative of the witness's character for truthfulness or untruthfulness. N.C. Gen. Stat. § 8C-1, Rule 608(b) (2013). However, "[e]ven if the trial judge allows the inquiry on cross-examination, extrinsic evidence of the conduct is not admissible." *State v. Morgan*, 315 N.C. 626, 634, 340 S.E.2d 84, 90 (1986).

Although the trial court allowed father to cross-examine O.O. regarding the prior incident, the video depicting O.O.'s conduct during the prior incident was not admissible to attack O.O.'s credibility because it was extrinsic evidence. *See id.* We therefore conclude that the trial court did not err in excluding the video.

Father next argues the trial court erred when it adjudicated O.O. a neglected juvenile. We disagree.

When reviewing an adjudication of neglect, we must determine whether the trial court's findings of fact are supported by clear and convincing evidence, and whether those findings of fact support the trial court's conclusions of law. *In re Gleisner*, 141 N.C. App. 475, 480, 539 S.E.2d 362, 365 (2000). If the trial court's findings of fact are supported by competent evidence, they are binding on appeal, even if there may be evidence to support contrary findings. *In re T.H.T.*, 185 N.C. App. 337, 343, 648 S.E.2d 519, 523 (2007), *aff'd as modified*, 362 N.C. 446, 665 S.E.2d 54 (2008). We review the trial court's conclusions of law *de novo*. *In re J.S.L.*, 177 N.C. App. 151, 154, 628 S.E.2d 387, 389 (2006).

A "neglected juvenile" is defined in part as "[a] juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent . . . or who lives in an environment injurious to the juvenile's welfare." N.C. Gen. Stat. § 7B-101(15) (2013). An adjudication of neglect requires "there be some physical, mental, or emotional impairment of the juvenile or a substantial risk of such impairment as a consequence of the failure to provide proper care, supervision,

or discipline." *In re Safriet*, 112 N.C. App. 747, 752, 436 S.E.2d 898, 901-02 (1993) (internal quotation marks omitted). "Section 7B-101(15) affords the trial court some discretion in determining whether children are at risk for a particular kind of harm given their age and the environment in which they reside." *In re C.M.*, 183 N.C. App. 207, 210, 644 S.E.2d 588, 592 (2007) (internal quotation marks omitted).

In the case *sub judice*, the trial court heard testimony from both O.O. and father regarding the events occurring on 27 February 2013. Based on the evidence, the court found as follows:

> The Respondent/father awoke in the morning as he usually does. He allowed the juvenile to practice driving and was waiting in the car when the juvenile left the house. There was ice/frost on the windshield of the car. The Respondent/father allowed the juvenile to start the car. The juvenile began to back up the car. The Respondent/father felt that the juvenile was going to strike a telephone pole and needed to scrape the ice/frost off the windshield. The Respondent/father provided the juvenile with a scraper. The juvenile scraped the windshield but not enough to where the Respondent/father felt it was safe enough for her to drive. There was an argument wherein the juvenile got out of the motor vehicle. The Respondent/father attempted to forcefully place the juvenile back into the vehicle. The juvenile did strike the Respondent/father and fought the Respondent/father. The juvenile ran to the

front door to get away from the confrontation with the Respondent/father. Once inside the home the confrontation began to escalate. Respondent/father grabbed the juvenile forcefully, placed her on the couch and told her she was going to listen to him. The juvenile attempted to remove herself from the couch and at each attempt the Respondent/father forcefully kept the juvenile from leaving the couch. Both Respondent/father and the juvenile continued to escalate the confrontation. Both the Respondent/father and the juvenile were physically assaulting the other. Both the Respondent/father and the juvenile were yelling and screaming at each other. Eventually this led to another room of the home at which time the Respondent/father attempted to restrain the juvenile by bending her hand backwards and at one point when Respondent/father was trying to restrain the juvenile he put his hands on her neck area for a couple of seconds. The Respondent/father indicated that the juvenile was being disrespectful and told the juvenile that she was not going to school that day but was going to stay home and think about what she had done. The confrontation ended when the Respondent/father left the home to move the car. The juvenile ran outside and called her mother on her cell phone. The Respondent/father chased her, tackled her and took her phone. The Respondent/father finally took the juvenile to her school in Charlotte, North Carolina. The school officials noticed the juvenile was crying and had minor scratches on her shoulder, a swollen right hand, and bruising. The school officials inquired as to what happened and the juvenile told them the injuries were caused by the Respondent/father.

In his challenge to the trial court's adjudication of neglect, father does not argue the court's findings of fact are lacking evidentiary support. Rather than contest the evidentiary basis of the trial court's findings of fact, father "denies the finding that he physically assaulted [O.O.]" and "denies choking or intentionally hurting his daughter." He argues "[t]he evidence showed that [father] attempted to restrain his daughter to get her unruly behavior under control. If [O.O.] got hurt in the process, it was due to her own misconduct, and not any intentional or inappropriate action on [father's] part." Father essentially claims the trial court erred by finding O.O.'s testimony to be credible and by failing to resolve evidentiary inconsistencies in his favor. The trial court, however, was free to reject father's testimony and give credence to O.O.'s testimony, and we decline father's invitation to reweigh the evidence and substitute our judgment for that of the trial court. *See In re Whisnant*, 71 N.C. App. 439, 441, 322 S.E.2d 434, 435 (1984) (stating that it is the trial court's "duty to weigh and consider all competent evidence, and pass upon the credibility of the witnesses, the weight to be given their testimony and the reasonable inferences to be drawn therefrom"). Therefore, the trial court's findings of fact

based on O.O.'s testimony are binding on appeal. *See In re T.H.T.*, 185 N.C. App. at 343, 648 S.E.2d at 523.

In addition to the trial court's findings of fact regarding the altercation between O.O. and father on 27 February 2013, the trial court found that O.O. has "anger issues," has been "combatant" with both father and her mother, and has been involved in numerous altercations with family members. The trial court further found as fact that:

> [t]he animosity that has built up in the juvenile towards the Respondent/father and the Respondent/mother has caused these angry outbursts from the juvenile. Based on prior outbursts between the juvenile, the Respondent/parents, and the siblings; [sic] to return the juvenile to either parent would lead to substantial risk of aggressive behavior between the parties, create an injurious environment, and place all parties at risk of bodily harm.

The court finally found that father was "not capable of getting the juvenile the help she needs." Father does not challenge these findings of fact, and they are thus binding on appeal. *See Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991) ("Where no exception is taken to a finding of fact by the trial court, the finding is presumed to be supported by competent evidence and is binding on appeal."). Based on the foregoing, we conclude that the trial court's findings of fact

are sufficient to support its conclusion that O.O. is a neglected juvenile. Accordingly, we affirm the trial court's order adjudicating O.O. a neglected juvenile.

Father next argues the trial court's disposition order erroneously modified the adjudication order by ordering that O.O. was adjudicated both neglected and dependent when the juvenile had only been adjudicated neglected.

There are "two phases in juvenile hearings——adjudication and disposition." *In re Eades*, 143 N.C. App. 712, 713, 547 S.E.2d 146, 147 (2001). An adjudication hearing in a juvenile action is "a judicial process designed to adjudicate the existence or nonexistence of any of the conditions alleged in a petition." N.C. Gen. Stat. § 7B-802 (2013). Whereas, the purpose of a disposition hearing is to design an appropriate plan to meet the juvenile's needs and protect and promote public safety. N.C. Gen. Stat. § 7B-2500 (2013).

Here, O.O. was adjudicated neglected during the adjudication phase. It is therefore clear that the trial court erred by ordering that O.O. was also adjudicated a dependent juvenile during the disposition phase. It does appear, however, that this was a mere clerical error. Accordingly, we remand the disposition order for correction of this clerical error. *See*

*State v. Smith*, 188 N.C. App. 842, 845, 656 S.E.2d 695, 696 (2008) ("When, on appeal, a clerical error is discovered in the trial court's judgment or order, it is appropriate to remand the case to the trial court for correction because of the importance that the record speak the truth." (internal quotation marks omitted)).

Father further argues the trial court erred at disposition by finding that "inappropriate discipline" was one of the "problems" that led to the adjudication of neglect. We disagree.

The trial court found as fact at adjudication that "neither the Respondent/father nor the juvenile handled the situation [which led to the adjudication of neglect] in an appropriate manner." We conclude that the trial court could thus properly determine at disposition that "inappropriate discipline" was a "problem" that led to the adjudication of neglect. Even assuming *arguendo* that this finding was erroneous, it is harmless error given that it appears to have had no impact on the dispositional plan for father.

Affirmed; remanded for correction of a clerical error.

Judges ELMORE and HUNTER, JR. concur.

Report per Rule 30(e).