STATE OF NORTH CAROLINA v. HARRY REED, JR.

No. COA01-1371

(Filed 15 October 2002)

**1. Evidence— hearsay—statement to detective—explanation of subsequent conduct**

The trial court did not err in a prosecution for possessing alcoholic beverages for sale without a permit by admitting an unidentified witness's statement to a detective where the statement was offered only to explain the detective's subsequent conduct. Furthermore, defendant did not renew his objection when additional testimony about the witness' statement was offered.

**2. Evidence— admissions—business card**

The trial court did not err in a prosecution for possessing alcoholic beverages for sale without a permit by admitting a copy of a business card found during a search of defendant's house where the card represented that defendant's house was open for alcohol, food, and fun. The card was properly authenticated as an admission by defendant, based on its distinctive characteristics taken in conjunction with circumstances.

**3. Alcoholic Beverages— possession for sale without permit—quantities**

The trial court did not err by denying defendant's motion to dismiss a charge of possessing alcoholic beverages for sale without a permit where the defendant contended that the quantities of liquor found in his house were insufficient to establish a prima facie case under N.C.G.S. § 18B-304(b), but the minimum quantities listed in subsection (b) are not necessary for an N.C.G.S. § 18B-304(a) violation.

Appeal by defendant from judgment entered 22 September 2000 by Judge Abraham P. Jones in Wake County Superior Court. Heard in the Court of Appeals 20 August 2002.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General P. Bly Hall, for the State.*

*John T. Hall for defendant-appellant.*

HUNTER, Judge.

Harry Reed, Jr. ("defendant") appeals his conviction and sentencing for possession of alcoholic beverages for sale without a permit. We find no error requiring reversal of the trial court's decision.

On the night of 9 January 2000, a motor vehicle accident occurred in front of defendant's house that resulted in a stabbing and another assault between the vehicle occupants. When the police arrived, they noticed the stabbing victims and witnesses all had "mini" bottles of liquor in their possession. Detective A. E. Talley ("Detective Talley"), the primary officer in charge of the investigation, was told by several of the witnesses that they had been at "Harry's place" prior to the accident and assaults. One of these witnesses (an unidentified woman) further stated that she had been at "Harry's liquor house" and proceeded to point to defendant's house.

Detective Talley subsequently instructed two detectives to interview defendant about the accident and related assaults. Defendant told the detectives that he was unaware of the events that had occurred outside his house and that no one had been at his residence prior to the accident. As the detectives questioned defendant from his doorway, they could see in plain view what appeared to be evidence of a liquor operation inside defendant's house.

Upon receiving a report of the detectives' interview and observations, Detective Talley contacted the ABC Commission. The ABC Commission informed Detective Talley about three previously executed search warrants for defendant's house by ABC Agent Ricky D. Barbour ("Agent Barbour") on 3 April 1998, 16 April 1998, and October of 1999. Those searches had resulted in the seizure of approximately fifty-two liters, twenty-eight liters, and at least eight liters of spirituous liquor respectively. During the 16 April 1998 search, Agent Barbour had specifically informed defendant that he would need an ABC permit and state and local revenue licenses to sell liquor. Detective Talley used the information from the report and the ABC Commission to obtain a search warrant for defendant's house.

Defendant's house was searched on 10 January 2000. As a result of the search, the police seized approximately five liters of spirituous liquor (which included seventy-five "mini" bottles of liquor), seventy-eight cans of beer, two bottles of champagne, and $946.00 in small bills (mostly one dollar bills). The police also found a box of "business cards" containing defendant's address, telephone number, and the statement, "Harry's open house for alcohol, food, and fun[.]" Finally, a piece of paper labeled "Harry's house rules" was seized during the search that included the motto: "Your money belong[s] in my pocket" and a rule stating "[n]o . . . begging. No . . . credit. . . . You don't get nothing here free." Thereafter, defendant was cited for possessing for sale "alcoholic beverages without first obtaining the applicable ABC permit and revenue licenses[,]" a misdemeanor under Section 18B-304(a) of the North Carolina General Statutes. Defendant was convicted on 8 March 2000 in Wake County District Court and immediately appealed his conviction to the Wake County Superior Court.

Defendant's appeal was heard in superior court on 21 September 2000. At trial, the court allowed the State to admit into evidence, over defendant's objection, the unidentified witness' statement regarding "Harry's liquor house" and a copy of the business card found during the search. Defendant testified on his own behalf and denied operating a liquor house. He further testified that the alcohol found in his home was left over from his New Year's Eve party and that he was intending to use the remaining alcohol for his birthday party on 16 January. Finally, when questioned about "Harry's house rules," defendant testified that he does give away alcohol when he has a party.

STATE v. REED

[153 N.C. App. 462 (2002)]

Defendant's trial concluded on 22 September 2000 when the jury returned a verdict of guilty of possession of alcoholic beverages for sale without a permit. As a result, defendant was sentenced to a term of forty-five days in the North Carolina Department of Correction, which was suspended for thirty-six months with supervised probation, a fine of $100.00, and $1,000.00 in attorney's fees to reimburse the state for court-appointed counsel. Defendant appeals.

## I.

By defendant's first two assignments of error he argues the trial court committed reversible error by allowing the State to introduce (A) the hearsay statement of an unidentified witness, and (B) the hearsay statement contained on a business card found in defendant's house during the police search.

Our statutes define hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801(c) (2001). The general rule is that hearsay statements are inadmissible as evidence. N.C. Gen. Stat. § 8C-1, Rule 802 (2001). However, our statutes do allow for the admissibility of some hearsay statements if they fall within certain recognized exceptions. *See* N.C. Gen. Stat. § 8C-1, Rules 803 and 804 (2001).

## A.

[1] By his first assignment of error, defendant argues the unidentified witness' statement to Detective Talley regarding "Harry's liquor house" was inadmissible hearsay. We disagree.

Our Supreme Court "has held that the statements of one person to another are admissible [as non-hearsay] to explain the subsequent conduct of the person to whom the statement was made." *State v. Maynard*, 311 N.C. 1, 16, 316 S.E.2d 197, 205 (1984) (citing *State v. Tate*, 307 N.C. 242, 245, 297 S.E.2d 581, 583 (1982)). In the case *sub judice*, upon hearing the witness' statement and learning the location of defendant's house, Detective Talley instructed two detectives to interview defendant about the accident and assaults that occurred in front of his home. It was the results of their interview and the information provided by the ABC Commission that led to defendant's house being searched. Thus, the witness' statement was offered only to explain Detective Talley's conduct subsequent to hearing the statement and not to show that defendant's home was actually a "liquor house."

Furthermore, assuming *arguendo* that the witness' statement was inadmissible, our Supreme Court has long held that when "evidence is admitted over objection, and the same evidence has been previously admitted or is later admitted without objection, the benefit of the objection is lost." *State v. Maccia*, 311 N.C. 222, 229, 316 S.E.2d 241, 245 (1984) (citations omitted). Here, after the trial court overruled defendant's objection to Detective Talley's testimony regarding the witness' reference to "Harry's liquor house," the detective testified: "I had that witness follow myself in a police car . . . and had her actually identify by pointing out which house she was stating was Harry's liquor house." Defendant did not object. Defendant's failure to renew his objection when additional testimony about the witness' statement was offered resulted in his waiving this issue on appeal.

Accordingly, we overrule defendant's first assignment of error.

B.

[2] By his second assignment of error, defendant argues the trial court's admission of a copy of the business card found during the search of his house contained an inadmissible hearsay statement. In ruling that the card was admissible, the trial judge stated:

> I'm going to overrule [defendant's] objection for the reason that the matter is offered not for what's asserted but for the fact that this item was found at the scene and has been testified to that it was found in the residence of the defendant on the occasion of the search on January the 10th and for that reason it's part of the evidentiary package and ergo are liable under 804, 803.24 what I call a catch all because it's a reliable item found on the scene of the defendant offered to show that it was in there found not for what's said on there. And so it is hearsay . . . .

At the outset, we note that this ruling does not clearly provide whether the court admitted the statement on the card because it was (1) non-hearsay or (2) hearsay pursuant to Rule 803(24) of our statutes. *See* N.C. Gen. Stat. § 8C-1, Rule 803(24). Nevertheless, we conclude the card was actually admissible as evidence under Rule 801(d) as an exception to the hearsay rule.

Rule 801(d) provides an exception to the hearsay rule for admissions by a party-opponent. N.C. Gen. Stat. § 8C-1, Rule 801(d) (2001). In pertinent part, Rule 801(d) states that "[a] statement is admissible as an exception to the hearsay rule if it is offered against

a party and it is [] his own statement, in either his individual or a representative capacity[.]" *Id.*

In the present case, the business card represented that defendant's house was open for alcohol, food, and fun. Although the statement on the card was not in defendant's handwriting and defendant did not testify to the card's authenticity, the card was properly authenticated by the State based on its "distinctive characteristics, taken in conjunction with circumstances." N.C. Gen. Stat. § 8C-1, Rule 901(b)(4) (2001). Those characteristics and circumstances included: (1) the card being one of many identical business cards found in a box in defendant's bedroom during the search; (2) the card containing defendant's name, address, and telephone number; and (3) defendant being the sole occupant of the house in which the card was found. With respect to (3), this Court has previously held that a showing that defendant was the sole occupant of the residence where documents were found "is sufficient for [those documents] to be admitted into evidence, and the weight given the evidence is for the jury to decide." *State v. Mercer*, 89 N.C. App. 714, 716, 367 S.E.2d 9, 11 (1988). Therefore, the card was properly authenticated as an admission by defendant. The court did not err in offering the card into evidence for the jury to decide what weight, if any, should have been given to it.

II.

**[3]** By defendant's third assignment of error he argues the trial court erred in denying his motion to dismiss the charge against him at the close of all the evidence. We disagree.

When ruling on a motion to dismiss in a criminal action, the trial court is to consider the evidence in the light most favorable to the State, which entitles the State "to every reasonable intendment and every reasonable inference to be drawn from the evidence[.]" *State v. Earnhardt*, 307 N.C. 62, 67, 296 S.E.2d 649, 653 (1982). The evidence considered must be "substantial evidence (a) of each essential element of the offense charged, or of a lesser offense included therein, and (b) of defendant's being the perpetrator of the offense." *Id.* at 65-66, 296 S.E.2d at 651. Whether the evidence presented is substantial is a question of law for the court. *State v. Stephens*, 244 N.C. 380, 384, 93 S.E.2d 431, 433 (1956). Therefore, "[t]he trial court's function is to determine whether the evidence allows a '*reasonable inference*' to be drawn as to the defendant's guilt of the crimes charged." *Earnhardt*, 307 N.C. at 67, 296 S.E.2d at 652 (citation omitted).

Here, the State's evidence established that three prior searches of defendant's house were executed by the ABC Commission. Each of those searches resulted in the seizure of quantities of spiritous liquor that were substantial enough to establish a *prima facie* case for possessing for sale alcoholic beverages without first obtaining the applicable ABC permit and revenue licenses under Section 18B-304(b). *See* N.C. Gen. Stat. § 18B-304(b).[1] Defendant contends that since the quantities of liquor seized during the search at issue were insufficient to establish such a *prima facie* case, the charge against him should have been dismissed. We disagree. It is not necessary, for a Section 18B-304(a) violation, that defendant have in his possession the quantities of alcoholic beverages listed in Section 18B-304(b). The ultimate question is whether there is substantial evidence defendant sold or possessed for sale "any" amount of alcoholic beverage without having an applicable ABC permit and revenue licenses. In this case, there is such substantial evidence. This evidence consisted of the police finding approximately five liters of spirituous liquor stored in various closets and refrigerators throughout defendant's house, approximately $946.00 in small bills, packaging items, and seventy-eight cans of beer. The police also found a box of business cards and a copy of "Harry's house rules," which indicated that nothing was "free." Finally, there was evidence that defendant admitted telling the local newspaper that the state's monopoly on liquor sales is like a communist dictatorship. Therefore, when considering all the substantial evidence in the light most favorable to the State, the court did not err in denying defendant's motion to dismiss at the close of the evidence.

For the aforementioned reasons, we conclude that defendant's conviction and sentencing should be upheld.

No error.

Judges GREENE and TIMMONS-GOODSON concur.

---

1. Section 18B-304(b) provides that:

Possession of the following amounts of alcoholic beverages, without a permit authorizing that possession, shall be prima facie evidence that the possessor is possessing those alcoholic beverages for sale:

  (1) More that 80 liters of malt beverages, other that draft malt beverages in kegs; ·

  (2) More that eight liters of spirituous liquor; or

  (3) Any amount of nontaxpaid alcoholic beverages.

N.C. Gen. Stat. § 18B-304(b) (2001).