McGEE, Chief Judge.
Michael Adrian Bennett ("Defendant") appeals from his convictions for statutory rape, statutory sexual offense, and indecent liberties with a child. Defendant argues the trial court erred in admitting at trial a written statement given by his girlfriend, who was the mother of the child involved. We agree; however, in light of the overwhelming evidence of Defendant's guilt, the trial court's error was not prejudicial.
I. Factual and Procedural History
In 2009, Defendant began dating the child's mother, who had two daughters. Defendant and the child's mother continued to date on and off until August 2015. During the time they were dating, Defendant regularly spent time at the child's mother's home and interacted with her daughters. The child's mother never saw anything inappropriate occurring between Defendant and the child. However, on 15 August 2015, she discovered text messages on Defendant's phone that caused her to become concerned about the nature of the relationship between Defendant and the child. The text messages indicated that Defendant and the child, who was fifteen years old, had been involved in a sexual relationship.
The child's mother confronted Defendant about the text messages and his relationship with the child. When Defendant did not respond to the child's mother, she told him he was no longer welcome to stay in her home. She went to the Iredell County Sheriff's Office ("Sheriff's Office") and filed a report regarding the text messages she had read. She also forwarded one of the text messages she had found to the Sheriff's Office. An officer went to the child's mother's home to speak with the child, and an investigation began. The child was subsequently interviewed at the Dove House Children's Advocacy Center ("Dove House"). The child told her interviewer ("the Dove House interviewer") that Defendant had touched her inappropriately multiple times and had sexual intercourse with her on several occasions between 11 August 2015 and 15 August 2015. The child was given a physical examination on 8 September 2015 at Dove House by a child sexual abuse evaluation expert ("the child sexual abuse expert").
Detective Benfield, the lead detective on the child's case, asked the child's mother to place a recorded phone call to Defendant on 26 August 2015 ("26 August 2015 phone call"). During that phone call, Defendant and the child's mother discussed the scope of Defendant's relationship with the child and the events that occurred during the week of 11 August 2015. Detective Benfield also asked the child's mother to come to the Sheriff's Office and give a written statement regarding the contents of the 26 August 2015 phone call. She wrote a hand-written statement on 2 September 2015 ("2 September 2015 written statement"), in which she detailed the circumstances leading up to the 26 August 2015 phone call and gave a narrative account of the phone call.
Defendant was indicted on 5 October 2015 for four counts of statutory rape of a person thirteen, fourteen, or fifteen years old; four counts of statutory sexual offense against a person thirteen, fourteen, or fifteen years old; and two counts of indecent liberties with a child. At trial, the State presented testimony from the child's mother, the child, three officers from the Sheriff's Office, the child's great-aunt, and the Dove House interviewer.
The child's mother testified about her relationship with Defendant, her discovery of the text messages between the child and Defendant, and her attempt to confront Defendant. She then testified about being asked to make the 26 August 2015 phone call by Detective Benfield. When asked to "tell the jury about that conversation," she testified: "I called [Defendant]. I asked him, I needed some closure. I want to know what happened, when it started, where did it happen. He told me it happened in my bedroom, in my child's room[.]" Defendant objected and moved to strike the testimony. The trial court sustained the objection and granted the motion to strike.
The State asked no further questions about the contents of the 26 August 2015 phone call and instead played a recording of that telephone call between Defendant and the child's mother. However, the quality of the recording was poor, and the State introduced a transcript of the 26 August 2015 phone call that included only the portions of the recording that were audible. Relevant portions of that transcript include:
[The child's mother]: Oh. Well, I was just trying to figure out what - when - when was the first time it happened ....
[Defendant]: I - I - I'm - listen, I was gonna tell you, um, 8 - um. 8/11.
[The child's mother]: 8/11.
[Defendant]: Yeah. (Indiscernible).
....
[The child's mother]: Did you use a condom or did you put - I'm just -
[Defendant]: Hey, I - I put two of them.
[The child's mother]: You put two condoms on?
[Defendant]: Yes -
....
[The child's mother]: When was the next time? I mean, I'm just clueless.
[Defendant]: Well, I - I (indiscernible).
[The child's mother]: Same thing? You did it to her from behind, too?
[Defendant]: Well, let's see, the first time I (indiscernible) three times.
[The child's mother]: Three times in one day? Where was [the child's sister]?
[Defendant]: Huh?
[The child's mother]: Where was [the child's sister]?
[Defendant]: She was asleep[.]
The State then asked the child's mother about her 2 September 2015 written statement. She stated that she remembered giving the 2 September 2015 written statement and verified that it was her handwriting and signature on the statement. The State then moved to introduce the 2 September 2015 written statement into evidence. Defendant objected and the trial court overruled the objection without argument from either side. The 2 September 2015 written statement was admitted into evidence and published to the jury.
The child testified that she and Defendant had a "father-daughter relationship" until Defendant began behaving inappropriately toward her when she was fourteen years old. The child testified about the events of the week of 11 August 2015, including giving detailed accounts about the sexual contacts with Defendant and Defendant's attempts to hide his actions. The child testified that she recorded the events of that week in her diary. The diary was introduced into evidence and published to the jury. The diary included several entries that corroborated her testimony. In an entry dated 12 August 2015, she wrote:
[Y]esterday was a GOOD DAY (8/11/15) ... So we were just talking & stuff and he asked me do I feel anything when we hug .... I said no. Then he poked my pXXXX and I jumped up and I said "Why you do that?" Then he said "I wanted (indiscernible) now see, you did fell something cause if you didn't, you wouldn't have felt anything." .... Then he said come on let me lick it before [your sister] gets up and I said [Defendant]? The he said yeah come on. He shut the door and locked it and IT WAS ON! ....
The entry then continued to describe in detail the sexual encounter between the child and Defendant. The child also testified that Defendant left her a hand-written note during the week of 11 August 2015. The note written by Defendant stated: "I don't think that [you] will ever find anyone [in] life that [truly] loves [you] more than I do. The crazy part is that it's (sic) went [to] a whole new [l]evel [for you] & me [too]."
The child's great-aunt testified that the child's mother came to her home on 15 August 2015 after discovering the text messages between Defendant and the child. She noted that the child's mother was distraught when she arrived and that the two of them went to the Sheriff's Office together.
The officers who testified were: the officer who went to the child's mother's home on 15 August 2015, lead Detective Benfield, and the officer responsible for maintaining telephone call recordings at the Iredell County Detention Center. Each testified that their investigations corroborated the child's story.
An officer from the Iredell County Detention Center ("Detention Center") testified to the method of recording and storing telephone calls made from the Detention Center. The officer identified a number of telephone calls made by Defendant that had been recorded while he was awaiting trial. Transcripts of these telephone calls were admitted into evidence. In a 31 August 2015 call published to the jury, Defendant stated:
Female Voice: (Indiscernible). Why you here? Is it a lie?
[Defendant]: Do what?
Female Voice: Is it a lie?
[Defendant]: Um, well, not really.
The Dove House employee who interviewed the child testified the interview lasted about an hour and a half and the child and the interviewer were the only people present. During the interview, the child gave extensive detail about the timing and method of the sexual contact. The child was able to answer follow-up questions fluidly and at length. The full transcript of the child's interview was admitted into evidence.
The sole witness called by Defendant was the child sexual abuse expert, who testified about performing the physical examination of the child. During the testimony, the medical report from the child's physical examination performed at Dove House was introduced into evidence and published to the jury. The medical report noted an absence of physical indications of trauma. However, the medical report noted that the physical examination did not "confirm nor refute" the child's description of the events. The physical examination was performed 8 September 2015, which was nearly a month after the last sexual contact between the child and Defendant. The child sexual abuse expert testified "in 95% or greater of the time when we do exams for sexual assaults and it's been, you know, more than a month since it happened, or you know, if there were acute injuries and they've healed, we don't see any medical findings to support that." Similarly, the child sexual abuse expert testified it was common for there to be a lack of physical injuries for persons who were the child's age because "it's less likely to see [physical indications of trauma] in girls who have already gone through puberty than younger girls who haven't gone through puberty yet."
At the close of all the evidence, the State dismissed one count of statutory rape of a person thirteen, fourteen, or fifteen years old. Defendant was found guilty by the jury of three counts of statutory rape of a person thirteen, fourteen, or fifteen years old; four counts of statutory sexual offense against a person thirteen, fourteen, or fifteen years old; and two counts of indecent liberties with a child. Defendant appeals.
II. Analysis
Defendant's sole argument on appeal is that the trial court erred by admitting the child's mother's 2 September 2015 written statement because that statement was hearsay and did not corroborate her testimony at trial.
A. Standard of Review
"When preserved by an objection, a trial court's decision with regard to the admission of evidence alleged to be hearsay is reviewed de novo ." State v. Johnson , 209 N.C. App. 682, 692, 706 S.E.2d 790, 797 (2011). The State contends Defendant did not preserve his challenge to the child's mother's 2 September 2015 written statement because Defendant failed to specify the basis for his objection. When making an objection, a party must "stat[e] the specific grounds for the ruling sought, if the specific grounds are not apparent." State v. Harris , 198 N.C. App. 371, 375, 679 S.E.2d 464, 467 (2009). Defendant objected when the State attempted to introduce the 2 September 2015 written statement into evidence. The trial court overruled the objection without hearing argument from either side. Defendant had previously objected several times throughout the child's mother's testimony to alleged hearsay evidence, including the content of text messages on Defendant's phone, statements made by the child's great-aunt, and the content of the 26 August 2015 phone call. Therefore, in the context of the child's mother's testimony and previous hearsay objections made by Defendant, the hearsay ground for Defendant's objection was apparent. Defendant's argument is, therefore, preserved and we review the trial court's admission of the 2 September 2015 written statement de novo . See Johnson , 209 N.C. App. at 692, 706 S.E.2d at 797.
B. Admission of the 2 September 2015 Written Statement
Defendant argues the trial court erred by admitting the 2 September 2015 written statement because it was hearsay and did not corroborate the child's mother's testimony at trial about her telephone call with Defendant. The State argues that the statement was admissible under the admission of a party-opponent hearsay exception. " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801(c) (2017). Hearsay is generally not admissible, unless it falls within one of the limited hearsay exceptions. N.C. Gen. Stat. § 8C-1, Rule 802 (2017).
In the present case, the 2 September 2015 written statement by the child's mother was a hearsay statement because it was offered to prove the truth of the statements within: that Defendant had admitted to sexual contact with the child and the location, manner, and number of times the sexual contact occurred. However, there is a limited non-hearsay use for corroborative statements where
[a] witness's prior consistent statements [are] admitted to corroborate the witness's courtroom testimony. Corroborative testimony is testimony which tends to strengthen, confirm, or make more certain the testimony of another witness. Prior statements admitted for corroborative purposes are not to be received as substantive evidence. [I]f the previous statements offered in corroboration are generally consistent with the witness' testimony, slight variations between them will not render the statements inadmissible. Such variations affect only the credibility of the evidence which is always for the jury. .... In a noncapital case, where portions of a statement corroborate and other portions are incompetent because they do not corroborate, the defendant must specifically object to the incompetent portions.
State v. Harrison , 328 N.C. 678, 681-82, 403 S.E.2d 301, 303-04 (1991) (citations and quotations omitted). See also State v. McCree , 160 N.C. App. 200, 207, 584 S.E.2d 861, 866 (2003).
The child's mother did not testify about the contents of the 26 August 2015 phone call, or any of the statements made by Defendant during the call. During the direct examination, the State asked the child's mother only one question about the contents of the 26 August 2015 phone call. Her testimony regarding the contents was objected to by Defendant and stricken from the record by the trial court. The State made no further attempt to question the child's mother about the contents of the phone call, but instead shifted focus to admitting the recording of the phone call and the transcript into evidence. Therefore, the 2 September 2015 written statement did not corroborate the child's mother's prior testimony because she did not testify to the contents of the phone call itself. Instead, the 2 September 2015 written statement sought to introduce new evidence about which the child's mother had not previously testified. The State was not entitled to introduce new evidence under a claim of corroboration. State v. Moore , 300 N.C. 694, 697, 268 S.E.2d 196, 199 (1980) (citing State v. Brooks , 260 N.C. 186, 132 S.E.2d 354 (1963) ). Therefore, the trial court erred in admitting the 2 September 2015 written statement as corroborative evidence.
The State further argues that the 2 September 2015 written statement constituted an admission by a party-opponent and was therefore admissible. N.C. Gen. Stat. § 8C-1, Rule 801(d) creates an exception to the hearsay rule for admissions by a party-opponent. However, in order to constitute an admission by a party-opponent, the statement must be "his own statement, in either his individual or representative capacity[.]" N.C.G.S. § 8C-1, Rule 801(d). In the case before us, the 2 September 2015 written statement was a statement by the child's mother, not by Defendant. While the statements Defendant made during the 26 August 2015 phone call could constitute admissions by a party-opponent, the child's mother's narrative re-telling, written a week after the 26 August 2015 phone call, cannot.
The State also points to State v. Reed , 153 N.C. App. 462, 570 S.E.2d 116 (2002) to show that documentary evidence can constitute an admission by a party-opponent. However, in Reed , this Court noted several characteristics that allowed a business card to be authenticated as a statement by the defendant, including: the card was identical to other business cards found in the defendant's bedroom; the card contained the defendant's name, address, and telephone number; and the defendant was the sole occupant of the house where the card was found. Id. at 467, 570 S.E.2d at 120. Based on those characteristics, the trial court could properly determine that the business card constituted a statement by the defendant. Id. In the case before us, the State does not argue that the 2 September 2015 written statement was produced by Defendant.
C. Prejudicial Error
Even when a challenge to the admission of evidence is properly preserved, a party must show that the erroneous admission of evidence was prejudicial. "The erroneous admission of hearsay testimony is not always so prejudicial as to require a new trial and the burden is on the defendant to show prejudice." State v. Allen , 127 N.C. App. 182, 186, 488 S.E.2d 294, 297 (1997) ; N.C. Gen. Stat. § 15A-1443(a). "Prejudicial error occurs when there is a reasonable possibility that, had the error not been committed, a different result would have been reached." Id. In order to establish that an error in admitting challenged evidence is prejudicial, Defendant must show "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." N.C. Gen. Stat. § 15A-1443(a) (2017). Defendant argues the evidence presented by the State in this case was not overwhelming. We disagree.
First, the child gave consistent, credible accounts of Defendant's actions to the Dove House interviewer, the investigating officers, and at trial regarding the sexual contact between her and Defendant. The child's recollection was corroborated by her hand-written statements she recorded in her diary that were introduced into evidence.
The State further presented substantial evidence in addition to the child's credible testimony. The child's mother testified that she found troubling text messages between Defendant and the child. While the contents of those text messages were inadmissible, the child's mother was able to testify as to what actions she took as a result of reading them, including confronting Defendant, reporting Defendant's actions to the Sheriff's Office, and forwarding one of the text messages to officers in the Sheriff's Office. The State introduced transcripts of telephone calls made by Defendant while he was awaiting trial, including the 31 August 2015 call where Defendant stated:
Female Voice: (Indiscernible). Why you here? Is it a lie?
[Defendant]: Do what?
Female Voice: Is it a lie?
[Defendant]: Um, well, not really.
Finally, the impact of the 2 September 2015 written statement was minimal as much of the information contained in the statement was redundant. When the 2 September 2015 written statement was introduced, the jury had already heard a recording of the 26 August 2015 phone call and received a transcript of that call. The transcript of the 26 August 2015 phone call included many of the most impactful portions of the 2 September 2015 written statement, including the date when the sexual contact first occurred, Defendant's use of a condom, and details about additional sexual contacts between Defendant and the child.
With the jury having already read the transcript and having heard the recording of the 26 August 2015 phone call, the 2 September 2015 written statement was largely redundant. Therefore, there is not a reasonable probability that a different outcome would have occurred absent its admission. See State v. Perry , 338 N.C. 457, 470, 450 S.E.2d 471, 478-78 (1994) ("Considering the redundant nature of this evidence and its insignificance, we are compelled to conclude that there was no reasonable possibility that a different result would have been reached had the alleged errors not been committed."). For these reasons, the erroneous admission of the 2 September 2015 written statement was not prejudicial.
III. Conclusion
For the reasons stated above, the trial court erred in admitting the 2 September 2015 written statement into evidence. However, the trial court's error was not prejudicial to Defendant because of the overwhelming evidence of his guilt.
NO PREJUDICIAL ERROR.
Report per Rule 30(e).
Judges HUNTER and HAMPSON concur.