An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 24-888

Filed 18 February 2026

McDowell County, Nos. 22CR000293-580, 22CR050679-580

STATE OF NORTH CAROLINA

v.

GLENDA DARLENE JAMES

Appeal by Defendant from Judgment entered 14 March 2023 by Judge J. Thomas Davis in McDowell County Superior Court. Heard in the Court of Appeals 16 October 2025.

*Attorney General Jeff Jackson, by Assistant Attorney General Reginaldo E. Williams, Jr., for the State.*

*MK Mann Law, by Mikayla K. Mann, for Defendant-Appellant.*

HAMPSON, Judge.

## **Factual and Procedural Background**

Glenda Darlene James (Defendant) appeals from a consolidated Judgment entered pursuant to a jury verdict finding her guilty of Possession of Methamphetamine and a guilty plea to the offense of Attaining the Status of a Habitual Felon. The Record before us, including evidence adduced at trial, tends to

reflect the following:

On 19 May 2022, officers of the McDowell County Sheriff's Office stopped a red Chevrolet Impala for speeding. Defendant was a passenger in the car. After being removed from the car, the driver, Jason Calloway, gave the officers a glass pipe that had been tucked in his pants. Defendant informed the officers she had some "rigs," which the officers understood to mean syringes used for the injection of drugs. Later during the traffic stop, Defendant retrieved a pink lunchbox from within the car, opened it, and handed it to an officer. Inside the lunchbox, officers found a zippered pouch, within which was a "crystal like substance" in a clear plastic bag. Forensic testing at the North Carolina State Crime Lab later determined the substance was methamphetamine. Defendant was subsequently indicted for Possession of Methamphetamine and Attaining the Status of a Habitual Felon.

Defendant's trial was set for 13 March 2023. On 12 March 2023, Defendant was arrested at around 9:00 p.m. and booked into jail between 3:00 a.m. and 4:00 a.m. on the morning of 13 March.[1] Defendant's trial began about five hours later at 9:30 a.m. Before the jury entered, the State informed the trial court that Defendant was

---

[1] It is unclear why Defendant was arrested and jailed on the evening of 12 March 2023. At trial the next morning, the prosecutor stated, "[w]hatever [Defendant] chose to do over the weekend that has led her to this position, that was on her own voluntary choice." The trial court "tend[ed] to agree with the State" that Defendant's predicament was due to her "own voluntary situation." On appeal, Defendant states the charges for which she was arrested were "unnamed." In any case, there is no evidence the events that resulted in Defendant's arrest on 12 March 2023 had any connection to the Possession charge at issue in her trial, nor was any evidence heard by the jury about this apparently unrelated arrest.

wearing the same clothes in which she had been arrested and jailed the prior night.

In its case-in-chief, the State called several officers of the McDowell County Sheriff's Office, who testified about the 19 May 2022 traffic stop, recovery of contraband, and subsequent investigation. Lieutenant Kirk Hensley testified that during the car search, the officers learned Defendant was on probation. Defense counsel objected; the trial court overruled the objection "at this point," and allowed direct examination to continue. After the State finished questioning Lt. Hensley, the trial court sustained defense counsel's objection "in regard to the portion of the answer . . . refer[ring] to probation" and instructed the jurors "to disregard that in your deliberations[.]"

The State later called Lieutenant Jesse Hicks as a witness. The State elicited testimony from Lt. Hicks related to the presence of probation officers at a search of Defendant's residence in connection with the investigation:

> [The State]: And who all was present for the search [of Defendant's residence]?
>
> [Lt. Hicks]: Myself, Lieutenant Hensley, Detective Jones, and some probation officers.
>
> . . . .
>
> [The State]: And do you know why probation officers were present for the search of this premises?
>
> [Defense Counsel]: Objection.
>
> [Trial Court]: Sustained at this point.

After the State rested its case, defense counsel made a motion to dismiss for insufficient evidence, which the trial court denied. Defense counsel next made a Motion for Mistrial. In support of this Motion, defense counsel cited Defendant's arrest and incarceration the prior evening and resulting lack of sleep, since she was "going through processing [at the jail] until almost 4 a.m." As a specific concern, defense counsel alleged the "jury ha[d] observed" Defendant "off and on sleeping" during the trial.

As part of its consideration of Defendant's Motion, the trial court conducted a colloquy with Defendant about her decision not to testify. Turning back to the Mistrial Motion, the trial court stated Defendant had answered its questions "clearly, and openly, and appropriately."

Defense counsel reiterated that his concern was with the potential effect on the jury of watching his client "nodding off." The trial court disagreed with this characterization of Defendant's actions:

> [Trial Court]: I don't think [Defendant is] nodding off. It just appeared to me that she's sitting there. She may have put her head down and close[d] her eyes, but I may do that during a trial. I don't know that that's any indication of anything in this particular case, but I have not observed anything that I would feel would be of such detrimental issue. Furthermore, too, so what? It doesn't have anything to do with it. It's totally irrelevant to the – to the situation back on May 19, 2022. So how in the world would she be prejudiced in any way?
>
> [Defense Counsel]: . . . Your Honor, I think just a normal juror, they just take her head nodding as to say, "Oh, well, she's – she's exhibiting behavior of – of a drug addict, so; therefore, she must

have had those drugs back – back in May."

Defense counsel continued this argument by mentioning an excused juror who, during jury selection, allegedly stated, " 'Hey, I've already made my opinion of this case based upon observing' " Defendant in the courtroom. In response, the trial court agreed the excused juror had "rendered an opinion" on Defendant's guilt or innocence but pointed out the juror had not stated the factual basis for or nature of that opinion. The trial court asked the prosecutor if he "recall[ed] if this particular juror ma[de] any indication as to whether she had rendered an opinion of guilt or innocence." The prosecutor replied that the juror "didn't say which way," and the trial court agreed. The trial court then denied Defendant's Motion for Mistrial.

The jury convicted Defendant of Possession of Methamphetamine on 14 March 2023. The same day, Defendant pleaded guilty to Attaining the Status of a Habitual Felon. The trial court consolidated the two convictions into one Judgment and imposed a prison sentence of 50 to 72 months. Defendant gave oral Notice of Appeal in open court.

## Issues

The issues on appeal are whether the trial court: (I) abused its discretion by denying Defendant's Motion for Mistrial; (II) erred by not *sua sponte* conducting a competency hearing or ordering a competency evaluation of Defendant; and (III) abused its discretion by not *ex mero motu* providing a curative jury instruction or declaring a mistrial after the jury heard questions and testimony related to

Defendant's probation status.

## **Analysis**

I.    Denial of Motion for Mistrial

As a threshold matter, on appeal, Defendant asks this Court to consider additional arguments not raised at trial in her Motion for Mistrial as grounds to conclude the trial court's ruling was an abuse of discretion: (1) Defendant did not receive her prescription medication during the trial; and (2) on the first day of trial, she wore the same "dirty" clothes in which she had been arrested and jailed overnight.

"In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C. R. App. P. 10(a)(1) (2025). The party must also "obtain a ruling" from the trial court on the request, objection, or motion. *Id.*

At trial, defense counsel argued a mistrial was proper on the basis that Defendant had been falling asleep and "nodding off" in view of the jury. However, on appeal, as Defendant concedes in Reply Briefing, the medication and clothing issues were "not specifically before the [trial] court and included in the motion for mistrial[.]" Nonetheless, Defendant claims her "behavior," "appearance," and "demeanor," were "clearly before the court during trial" and these factors "made it clear that there was a major issue and the trial court failed to address it." Citing no authority, Defendant apparently contends the denial of her Motion was an abuse of discretion because her

behavior, demeanor, and appearance were literally "before" the trial court—in the sense that the trial court could observe Defendant in the courtroom.

As defense counsel did not present Defendant's behavior, appearance, or demeanor as "specific grounds" for the Motion, i.e., reasons the trial court should declare a mistrial, *see* N.C. R. App. P. 10(a)(1) (2025), any arguments about Defendant's behavior, appearance, and demeanor were not preserved as grounds for appellate review of the denial of her Motion. Therefore, Defendant may not raise these arguments for the first time on appeal. *See Kabasan v. Kabasan*, 257 N.C. App. 436, 457-58, 810 S.E.2d 691, 705 (2018) ("Our Supreme Court has long held that where a theory argued on appeal was not raised before the trial court, the law does not permit parties to swap horses between courts in order to get a better mount in the appellate courts." (citation and quotation marks omitted)).

Defendant further contends the trial court's denial of her Motion for Mistrial based on her alleged falling asleep during trial after her arrest the prior night constituted an abuse of discretion. "It is well settled that the decision of whether to grant a mistrial rests in the sound discretion of the trial judge and will not be disturbed on appeal absent a showing of an abuse of discretion." *State v. Barts*, 316 N.C. 666, 682, 343 S.E.2d 828, 839 (1986) (citation omitted). "Abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988) (citation omitted).

A trial court "must declare a mistrial upon [a criminal] defendant's motion if there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, resulting in substantial and irreparable prejudice to the defendant's case." N.C. Gen. Stat. § 15A-1061 (2023). A mistrial "is a drastic remedy, warranted only for such serious improprieties as would make it impossible to attain a fair and impartial verdict." *State v. Jones*, 241 N.C. App. 132, 138, 772 S.E.2d 470, 475 (2015) (citation and quotation marks omitted). On appeal, "the trial court's decision is to be given great deference because the trial court is in the best position to determine whether the degree of influence on the jury was irreparable." *State v. Hill*, 347 N.C. 275, 297, 493 S.E.2d 264, 276 (1997) (citation omitted).

In the case *sub judice*, defense counsel argued for a mistrial due to Defendant's "off and on sleeping" and "nodding off" in view of the jury. In considering whether this conduct required ordering a mistrial, the trial court made numerous Findings that were responsive to defense counsel's claims. The trial court stated, *inter alia*: (1) it had "observed the defendant" throughout the trial; (2) it had "made inquiry" of Defendant, who "answered the questions rationally"; (3) that while Defendant had "lowered" her head and eyes, her head had "not hit the table," which would indicate "falling asleep"; (4) Defendant "ha[d] also opened her eyes and responded to [defense counsel's] questions throughout the trial"; and (5) it "appear[ed] to [the trial court] that [Defendant] is . . . clearly able to deal with this matter." Further, when defense counsel clarified that his specific concern was with the jury "watching [Defendant] . .

. nodding off," the trial court disagreed with this characterization of her behavior.

Upon review of the Transcript, we are unable to say the trial court abused its discretion by denying Defendant's Motion. The trial court's oral Findings demonstrate its fair consideration of defense counsel's arguments. The trial court rooted these Findings in observations of and interactions with Defendant, including a colloquy about her choice not to testify. The trial court cited its own observations in rejecting defense counsel's claim that Defendant had been falling asleep or nodding off. The trial court also made affirmative Findings about Defendant's conduct; for example, it stated Defendant had answered questions "clearly" and "rationally." We give "great deference" to the trial court's resolution of defense counsel's concerns, "because [it] is in the best position to determine whether the degree of influence on the jury was irreparable." *Hill*, 347 N.C. at 297, 493 S.E.2d at 276.

Thus, the trial court provided a sound basis for its decision to deny Defendant's Motion. Therefore, the trial court's ruling was neither arbitrary nor manifestly unsupported by reason. *See Hennis*, 323 N.C. at 285, 372 S.E.2d at 527. Consequently, the trial court did not abuse its discretion by denying Defendant's Motion for Mistrial.

II.     Competency

Defendant next argues the trial court erred by not *sua sponte* conducting a

competency hearing or ordering a competency evaluation.[2] She alleges her "behavior throughout trial raised significant doubt as to her competency to stand trial."

Under our General Statutes,

> [t]he question of the capacity of the defendant to proceed may be raised at any time on motion by the prosecutor, the defendant, the defense counsel, or the court. The motion shall detail the specific conduct that leads the moving party to question the defendant's capacity to proceed. When the capacity of the defendant to proceed is questioned, the court shall hold a hearing to determine the defendant's capacity to proceed.

N.C. Gen. Stat. § 15A-1002(a), (b)(1) (2023). Trial courts may order expert examinations of a defendant as part of the capacity inquiry. *Id.* § 1002(b)(1a)-(2) (2023).

Generally, "the trial court is only required to hold a hearing to determine the defendant's capacity to proceed *if* the question is raised." *State v. Badgett*, 361 N.C. 234, 259, 644 S.E.2d 206, 221 (emphasis in original) (citation and quotation marks omitted), *cert. denied,* 552 U.S. 997, 128 S. Ct. 502, 169 L. Ed. 2d 351 (2007) (Mem.). Here, neither defense counsel nor the State requested a competency hearing. However, "[t]he trial court has a 'constitutional duty to institute, *sua sponte*, a

---

[2] Defendant argues the trial court should have ordered "a competency evaluation" and/or held a "competency hearing." But these terms refer to different actions by the trial court. When a defendant's capacity to proceed to trial is questioned on motion of the trial court, prosecutor, defendant, or defense counsel under N.C. Gen. Stat. § 15A-1002(a), the trial court "shall hold a hearing to determine the defendant's capacity to proceed." N.C. Gen. Stat. § 15A-1002 (b)(1) (2023). By contrast, a competency evaluation refers to expert or medical examinations the trial court may order upon initiating an inquiry into defendant's capacity. *See State v. Rich*, 346 N.C. 50, 60, 484 S.E.2d 394, 401 (1997) ("A trial court *may* order a mental health evaluation when that defendant's capacity to proceed is questioned." (emphasis added) (citing N.C. Gen. Stat. § 15A-1002(b)(1) (1988)).

competency hearing *if there is substantial evidence before the court* indicating the accused may be mentally incompetent.'" *State v. George*, 289 N.C. App. 660, 663, 891 S.E.2d 324, 327 (2023) (emphasis in original) (quoting *State v. Heptinstall*, 309 N.C. 231, 236, 306 S.E.2d 109, 112 (1983)).

In the instant case, there is nothing in the Record to support Defendant's assertion that her behavior throughout trial amounted to substantial evidence indicating she may have been mentally incompetent. Prior to trial, defense counsel informed the trial court Defendant had not been able to take her medication that morning. The trial court discussed this concern with Defendant; she stated her medications were solely for pain and she had, at the time of their colloquy, missed only one dose. The trial court, addressing Defendant, observed: "you're obviously, standing and you're talking clearly. You look a little disheveled, but, at the same time . . . there's nothing about it I would say would be prejudicial."

The only evidence Defendant points to which allegedly demonstrates a lack of capacity on her part is the assertion that she allegedly struggled to remain awake during trial. But "a defendant does not have to be at the highest stage of mental alertness to be competent to be tried. So long as a defendant can confer with his or her attorney . . . the defendant is able to assist his or her defense in a rational manner." *State v. Shytle*, 323 N.C. 684, 689, 374 S.E.2d 573, 575 (1989). Here, the trial court acknowledged having observed Defendant lower her head and close her eyes at times, but added Defendant had also "opened her eyes and responded to

[defense counsel's] questions throughout the trial." Additionally, as part of hearing defense counsel's Motion for Mistrial, the trial court held a colloquy with Defendant about her right not to testify; on its conclusion, the trial court stated she had "answered my questions clearly, and openly, and appropriately."

Thus, there was not substantial evidence before the trial court indicating Defendant may have been mentally incompetent. *See George*, 289 N.C. App. at 663, 891 S.E.2d at 327. Therefore, the trial court did not have a constitutional duty to *sua sponte* institute a hearing to determine Defendant's capacity. *See id.* Consequently, the trial court did not err by not *sua sponte* conducting a competency hearing.

III.    Probation Evidence

In her final argument, Defendant contends the trial court erred by failing to *ex mero motu* issue a curative jury instruction after testimony about her probation status was heard by the jury or subsequently declare a mistrial.[3]

At the outset, we note the trial court *did* provide a curative instruction after Lt. Hensley's testimony—and did so *sua sponte* without a specific request by defense counsel. However, Defendant asserts this one instruction was not enough, pointing out: (1) no similar instruction was given during the subsequent direct examination of

---

[3] To the extent Defendant argues the trial court should have given some type of curative instruction as part of its final jury charge, we note that she made no such request at trial. "In the absence of an objection at trial, jury instructions may be challenged on appeal only for plain error, and the defendant must 'specifically and distinctly' argue plain error on appeal." *State v. Leopard*, _ N.C. App. _, _, 920 S.E.2d 390, 394 (2025) (quoting N.C. R. App. P. 10(a)(4) (2024)) (citing *State v. Lawrence*, 365 N.C. 506, 516, 723 S.E.2d 326, 333 (2012)). Accordingly, because Defendant has not argued plain error on appeal, we consider any argument regarding the final jury instructions abandoned. *See id.*

Lt. Hicks; and (2) the trial court did not instruct the jury on this issue again during the jury charge. Nonetheless, Defendant does not cite a single case in which a North Carolina appellate court has discerned error in a trial court's failure to issue *ex mero motu* a curative jury instruction absent a request from the defense—nor has our research revealed such a case.

"A trial court does not err by failing to give a curative jury instruction when, as here, it is not requested by the defense." *State v. Williamson*, 333 N.C. 128, 139, 423 S.E.2d 766, 772 (1992) (citation omitted); *see also State v. Locklear*, 322 N.C. 349, 359-60, 368 S.E.2d 377, 383-84 (1988) (no error where the trial court did not instruct jury to disregard emotional display of murder victim's widow, when defendant did not request a curative instruction).

Here, the trial court initially overruled defense counsel's objection and allowed the State to question Lt. Hensley about the officers' discovery of Defendant's probation status during the traffic stop. However, the trial court subsequently reversed its own ruling, sustained the objection, and instructed the jury to disregard Lt. Hensley's references to probation in its deliberations. This curative instruction was "timely and specific" and "[t]here is no evidence to indicate the jury was incapable of following the court's instructions." *State v. Eanes*, _ N.C. App. _, _, 920 S.E.2d 914, 919 (2025) (citation omitted).

Moreover, the trial court sustained each of defense counsel's additional objections to the mentions of probation during the testimony of State's witnesses. "It

is a well settled principle that one may not suffer prejudice where his objections are sustained." *State v. Banks*, 210 N.C. App. 30, 43, 706 S.E.2d 807, 817 (2011) (citing *State v. Call*, 349 N.C. 382, 413, 508 S.E.2d 496, 515 (1998)). Thus, there was no need for the trial court to issue a second curative instruction after defense counsel objected to Lt. Hicks' mention of a "probation officer" because the trial court immediately sustained that objection and no further testimony was elicited from Lt. Hicks on the subject. *See Banks*, 210 N.C. App. at 43, 706 S.E.2d at 817.

Further, after the testimony of Lieutenants Hensley and Hicks, Jason Calloway, the driver of the car in which Defendant was a passenger on 19 May 2022, testified on cross-examination by the State that Defendant was on probation at the time of the events at issue. Defendant did not object to the admission of this testimony. Thus, Defendant has failed to show prejudice. *See State v. Reed*, 153 N.C. App. 462, 466, 570 S.E.2d 116, 119 (2002) ("[O]ur Supreme Court has long held that when 'evidence is admitted over objection, and the same evidence has been previously admitted or is later admitted without objection, the benefit of the objection is lost.'" (quoting *State v. Maccia*, 311 N.C. 222, 229, 316 S.E.2d 241, 245 (1984)).

Defendant further contends, in the absence of a second curative instruction, the trial court should have declared a mistrial after the State asked Lt. Hicks why probation officers were present for the search of Defendant's residence. However, "[a] mistrial may be granted only when the case has been prejudiced at trial to such an extent that a fair and impartial verdict is impossible." *State v. Jaynes*, 342 N.C. 249,

280, 464 S.E.2d 448, 467 (1995) (citations omitted). As we have just explained, Defendant has not shown she has suffered prejudice from any alleged improperly admitted testimony about her probation status.

In sum, although the trial court initially allowed some testimony to come in about Defendant's probation status, it subsequently instructed the jury not to consider that evidence and it sustained all of defense counsel's further objections on the matter. Additionally, evidence that Defendant was on probation at the time of the events at issue was admitted through the testimony of Jason Calloway without objection. Accordingly, Defendant has failed to demonstrate the prejudice requisite to justify a mistrial. *See id.* Thus, the trial court did not err by not choosing to issue additional curative jury instructions or to declare a mistrial *ex mero motu* on the basis of questions and testimony referencing Defendant's probation status.

## Conclusion

Accordingly, for the foregoing reasons, we conclude there was no error at Defendant's trial and affirm the Judgment of the trial court.

NO ERROR.

Judges CARPENTER and FREEMAN concur.

Report per Rule 30(e).